[No. C023170. Third Dist. Dec. 14, 1998.]

In re KACY S. et al., Persons Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KACY S. et al., Defendants and Appellants.

**COUNSEL**

Deborah R. Schulte, under appointment by the Court of Appeal, for Defendant and Appellant Kacy S.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant Daren S.

Danial E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Harry Joseph Colombo and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, J.***—The minor, Daren S., admitted he was within the provisions of Welfare and Institutions Code section 602 in that he challenged a person in a public place to a fight. (Pen. Code, § 415, subd. (1).) The minor, Kacy S., the brother of Daren, admitted he was within the provisions of Welfare and Institutions Code section 602 in that, in a public place, he used offensive words which were inherently likely to provoke an immediate, violent reaction. (Pen. Code, § 415, subd. (3).) The minors were not removed from the physical custody of their parents but were placed on six months' probation on the conditions they each "submit to urine testing to determine the presence of alcohol and illegal drugs in [their] system[s] pursuant to section

---

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

729.3 of the Welfare and Institutions Code," that Daren "not associate with any persons not approved by his probation officer," and that Kacy "not associate with Jason [B.]."

The minors appeal, contending imposition of the urine testing condition was improper. Daren contends the condition requiring his probation officer's approval of his associates is overbroad and unreasonable. Other than modifying Daren's probation order to limit the application of the associational restriction only to Jason B., we shall affirm the judgment as to each minor.

After school hours on October 18, 1995, Tim Gallagher, a teacher at Quincy High School, observed an argument between Wyatt O. and Jason B. Gallagher told Daren, Kacy and Jason to leave the area. Rather than leave, Daren became involved in a physical altercation with Wyatt. When Gallagher attempted to break up the fight, Kacy stepped in front of him with arms outstretched, preventing him from intervening. Kacy was not involved in the physical altercation but continuously yelled profanities at teaching staff and students.

I

The minors contend the juvenile court abused its discretion in imposing a urine testing condition because neither their offenses nor their social histories suggest substance abuse. Moreover, they assert the condition violates their constitutional rights to privacy, protection from unreasonable searches and seizures, due process of law and equal protection.[1] None of these claims have merit.

The authority to require urine testing as a condition of probation is conferred by Welfare and Institutions Code section 729.3 (hereafter section 729.3) which provides: "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, *may require the minor to submit to urine testing* upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs."[2] (Italics added.) By providing that the court "may" require urine testing, section 729.3 commits the decision to order testing in a particular case to the juvenile court's discretion.

---

[1] At the probation hearing, Daren's counsel stated her client "has no objection to the testing," but nevertheless voiced her "personal belief" that the condition lacked any basis in the record. Because counsel's remarks brought the matter to the juvenile court's attention and gave it an opportunity to change its ruling, the purpose of the rule requiring objections to probation conditions has been satisfied. (*People* v. *Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802].) We thus consider Daren's argument on the merits.

[2] In enacting section 729.3, the Legislature made uncodified findings and declarations:

The minors contend that notwithstanding section 729.3, "the decision to impose urine testing in a case which does not involve use of drugs or alcohol, or in which the social history of the juvenile indicates no drug or alcohol use, constitutes an abuse of discretion." Our task is simply to construe, not amend, the statute. We may not, under the guise of construction, rewrite section 729.3 or, as the minors propose, ignore the plain meaning of its terms. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; *San Miguel Consolidated Fire Protection Dist.* v. *Davis* (1994) 25 Cal.App.4th 134, 157 [30 Cal.Rptr.2d 343].)

Even if, in derogation of the clear statutory language, we were to weigh the testing condition on the scale devised to evaluate the appropriateness of probation conditions imposed pursuant to subdivision (j) of Penal Code section 1203.1, the condition would have to be upheld.[3]

■ "In [*People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545]], the Supreme Court determined '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." . . .' " (*In re Laylah K.* (1991) 229 Cal.App.3d

---

"SECTION 1. (a) The Legislature finds and declares as follows:

"(1) The problem of juvenile delinquency should be addressed at its inception rather than after it has progressed to serious criminality.

"(2) The precursors of serious criminality by juveniles include incorrigibility, truancy, curfew, illiteracy, and alcohol and drug abuse. These precursors have been given little attention because the attention has been focused on those juveniles who are the most difficult to reform, the serious and habitual offenders.

"(3) The young offender who exhibits the symptoms of future delinquency presents the · most significant potential for rehabilitation, yet this young offender has been largely ignored. This approach is a disservice to the community, the parents, and most importantly, to our youth.

"(b) In this regard, it is the intent of the Legislature to implement a program based on a different perspective and strategy toward juvenile delinquency which program is designed to reach our children before they become habitual criminals, and requires the intervention by the juvenile justice system at the earliest signs of drug abuse, gang affiliation, and other antisocial behavior. The program mandates parental involvement, drug and alcohol counseling, structured probation programs monitored for compliance, and early judicial intervention with delinquent youths. It seeks to promote the positive development of juveniles by emphasizing the enforcement of school attendance laws and the establishment of special education and socialization programs designed for the individual needs of the minor." (Stats. 1989, ch. 1117, § 1, p. 4113.)

[3]Penal Code section 1203.1, subdivision (j) provides in relevant part: "The court may impose . . . other reasonable conditions [of probation] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ."

1496, 1500 [281 Cal.Rptr. 6], citation omitted; disapproved on other grounds, *In re Sade C.* (1996) 13 Cal.4th 952, 983, fn. 13 [55 Cal.Rptr.2d 771, 920 P.2d 716].)

■ The urine testing condition is designed to detect the presence of substances whose use by minors *is unlawful.* (Cal. Const., art. XX, § 22 [alcohol]; Health & Saf. Code, § 11000 et seq. [drugs].) Thus, the testing " 'relates to conduct which is . . . in itself criminal.' " (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Moreover, in enacting section 729.3, the Legislature has found that "alcohol and drug abuse" are "precursors of serious criminality . . . ." (Stats. 1989, ch. 1117, § 1, subd. (a)(2), p. 4113; fn. 2, *ante.*) Thus, the testing is also " 'reasonably related to future criminality.' " (*Lent, supra,* 15 Cal.3d at p. 486.) Because the testing condition relates to criminal conduct and is reasonably related to future criminality, its imposition is within the juvenile court's discretion even as measured by the *Lent* formulation. (*Ibid.; In re Laylah K., supra,* 229 Cal.App.3d at p. 1500.)

■ The minors contend that, by authorizing testing where alcohol and drugs are not implicated in their offenses or social histories, section 729.3 unconstitutionally invades their privacy (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 40 [26 Cal.Rptr.2d 834, 865 P.2d 633]) and subjects them to unreasonable search and seizure (U.S. Const., 4th Amend; Cal. Const., art. I, § 13.)

■ The collection and testing of urine intrude upon expectations of privacy that society has long recognized as reasonable; these intrusions are searches under the Fourth Amendment. (*Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 617 [109 S.Ct. 1402, 1413, 103 L.Ed.2d 639, 660].) Whether a particular search and seizure is unreasonable " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' . . ." (*Id.* at p. 619 [109 S.Ct. at p. 1414, 103 L.Ed.2d at p. 661], citations omitted.) "On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order." (*New Jersey* v. *T. L. O.* (1985) 469 U.S. 325, 337 [105 S.Ct. 733, 740, 83 L.Ed.2d 720, 731-732].)

Although urine tests are not physically intrusive (*Skinner* v. *Railway Labor Executives' Assn., supra,* 489 U.S. at p. 626 [109 S.Ct. at p. 1418, 103 L.Ed.2d at p. 665]), collection of the samples under the direct observation of a monitor to ensure their integrity does implicate protected privacy interests.

(*Id.* at p. 626 [109 S.Ct. at p. 1418, 103 L.Ed. at p. 666]; contrast *Hill* v. *National Collegiate Athletic Assn., supra,* 7 Cal.4th at p. 43.) ▮ However, a probationer's expectations of privacy are diminished by his probation status and are subordinated to governmental activities which reasonably limit the right of privacy. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 85 [8 Cal.4th 727a, 32 Cal.Rptr.2d 33, 876 P.2d 519].)

The testing condition is a reasonable intrusion upon a probationer's expectations of privacy. (*Skinner* v. *Railway Labor Executives' Assn., supra,* 489 U.S. at p. 628 [109 S.Ct. at p. 103 L.Ed.2d at p. 667].) The governmental interest in testing is strong. The juvenile court's goals are to protect the public and rehabilitate the minor. (Welf. & Inst. Code, § 202, subd. (a); *In re Tyrell J., supra,* 8 Cal.4th at p. 81.) Section 729.3 serves both goals. It protects the public by establishing procedures to deter or prevent use of alcohol and unlawful drugs by minors. It advances the rehabilitation of young offenders by seeking to detect alcohol or drug use as a precursor of criminal activity in order to facilitate intervention at the earliest time. (Stats. 1989, ch. 1117, § 1, subds. (a)(2), (b), p. 4113; fn. 2, *ante.*) Although urine testing constitutes an intrusion on privacy, the effect of the intrusion is outweighed by the government's legitimate interest in closely monitoring the rehabilitation of minors who are granted probation and returned to the custody of their parents. (*Skinner* v. *Railway Labor Executives Assn., supra,* 489 US. at p. 617 [109 S.Ct. at p. 1413, 103 L.Ed.2d pp. 659-660].)

The minors contend that, by allowing testing even where there is no previous involvement with alcohol and drugs, section 729.3 is arbitrary, capricious and thus violative of substantive due process.

As noted, section 729.3 is designed to detect conduct that is a precursor of criminal activity at the earliest possible time. (Stats. 1989, ch. 1117, § 1, subds. (a)(2), (b), p. 4113; fn. 2, *ante.*) Early intervention has a "real and substantial relation to the object sought to be attained" (*Nebbia* v. *People of State of New York* (1934) 291 U.S. 502, 525 [54 S.Ct. 505, 511, 78 L.Ed. 940, 950, 89 A.L.R. 1469]), because "[t]he young offender who exhibits the symptoms of future delinquency presents the most significant potential for rehabilitation . . . ." (Stats. 1989, ch. 1117, § 1, subd. (a)(3), p. 4113; fn. 2, *ante.*) In contrast, delaying testing until after the minor's alcohol or drug abuse has contributed to recidivist criminal conduct would diminish the prospects of rehabilitation. (*Ibid.*) Section 729.3 represents a reasonable legislative response to a serious social problem and thus does not violate substantive due process.

▮ Kacy contends section 729.3 violates his right to equal protection because it "permits discriminatory treatment among probationers." He argues the section "permits discriminatory application" because "an individual

in another court or in another county whose offense was [similar to his] may not be required to submit to urine testing depending on the whim of the particular court." Thus, he claims, a minor in Sacramento County might not be required to submit to testing while a similarly situated minor in Plumas County would be so required. We decline to speculate as this contention invites us to do that juvenile courts in different counties will exceed their discretion in applying or declining to apply section 729.3. (See Evid. Code, § 664.)

Kacy contends section 729.3 violates equal protection by mandating alcohol and drug testing for the "less serious offender" who is allowed to remain in the parental home while not mandating it for the "more serious offender who is removed from the home."

"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics in original.) Contrary to Kacy's argument, minors who remain in the parental home are not situated similarly to those who are removed. When the juvenile court removes a minor from the home, it selects the environment into which he or she is placed. Presumably, the court will reject placement in an environment that is conducive to the unlawful use of alcohol or drugs. Conversely, when the minor is allowed to remain in the parental home, the environment in which the delinquency occurred, or possibly was even spawned, the court's ability to shape the influences on the minor is minimized. That lessened ability creates a correspondingly greater need for careful monitoring. Section 729.3 provides a means of doing so.[4]

## II

■ Daren contends the probation condition that he "not associate with any persons not approved by his probation officer" is overbroad and unreasonable. The People respond that Daren has waived this objection by failing to assert it, unlike Kacy, who did object in the juvenile court to the

---

[4]Kacy contends section 729.3 violates equal protection because it "broadly covers all minors who receive probation and are not removed from the home, regardless of the offense involved"; thus, it "fails to consider the individual characteristics" of probationers, and fails to distinguish between "those whose offenses or past social history involved use of illegal drugs or alcohol" and those whose offenses or history did not.

This argument stands equal protection on its head: it posits that the law treats differently situated persons similarly, not similarly situated persons differently. (*In re Eric J., supra,* 25 Cal.3d at p. 530.) Kacy offers no authority, and we are aware of none, that compels the law to differentiate between juvenile probationers on the basis of their social histories.

overbreadth of this condition. (*People* v. *Welch, supra,* 5 Cal.4th at p. 237.) However, the *Welch* rule is founded on considerations of judicial economy which will not be furthered by upholding a probation condition that literally requires the probation officer to approve Daren's "associat[ion]" with "persons" such as grocery clerks, mailcarriers and health care providers. Nor does the present record justify such a sweeping limitation on Daren's liberty. (See, e.g., *People* v. *Hodgkin* (1987) 194 Cal.App.3d 795, 802 [239 Cal.Rptr. 831].)

In response to Kacy's overbreadth objection, the prosecutor acknowledged that "a reasonable thing for probation to do" would be to forbid Kacy's association "with . . . [Jason] . . . for a while." An identical restriction would be equally appropriate for Daren. We shall modify Daren's probaton order accordingly.

The judgment as to Kacy is affirmed. As to Daren, the probation condition that he not associate with any persons not approved by his probation officer is modified to provide only that he shall not associate with Jason B. As so modified, the judgment as to Daren is affirmed.

Davis, J., concurred.

**BLEASE, Acting P. J.**—I dissent.

The majority conclude the trial court has unlimited discretion under Welfare and Institutions Code section 729.3 (section 729.3) to require urine testing for alcohol or drugs as a condition of probation for violation of an offense, here the use of bad language on the school ground, for which there is no demonstrable relationship to alcohol or drug use.

I disagree. Section 729.3 is permissive and subject to the test of an abuse of discretion. That test is measured in the case law by whether there is a demonstrable relationship between the offense and drug or alcohol use.

The authority to require urine testing as a condition of probation is specifically conferred by section 729.3 which provides: "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, *may* require the minor to submit to urine testing upon the request of a peace officer or probation officer for the

purpose of determining the presence of alcohol or drugs."[1] (Italics added.) By using the discretionary "may," section 729.3 commits the decision to order testing in a particular case to the juvenile court's discretion. By its terms it does not confer absolute discretion.

The question then is whether the discretion conferred has been abused. "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion. [Citation.]" (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].)

The minors contend "the decision to impose urine testing in a case which does not involve use of drugs or alcohol, or in which the social history of the juvenile indicates no drug or alcohol use, constitutes an abuse of discretion." They rely on the leading case, *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545].

In *Lent*, the Supreme Court said: "The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].) Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent, supra*, 15 Cal.3d at p. 486, fn. omitted.)

The majority claim the urine testing condition is valid under *Lent* because it is intended to detect the presence of substances whose use by minors is unlawful, that, it "relates to conduct which is . . . in itself criminal . . . ." Moreover, they claim that since the Legislature found that "alcohol and drug abuse" are "precursors of serious criminality" (Stats. 1989, ch. 1117, § 1, subd. (a)(2), p. 4113; maj. opn., *ante*, at p. 708, fn. 2) urine testing is "reasonably related to future criminality."

---

[1]Section 729.3 is part of a program "designed to reach our children before they become habitual criminals, and requires the intervention by the juvenile justice system at the earliest signs of drug abuse, gang affiliation, and other antisocial behavior." (Stats. 1989, ch. 1117, § 1, subd. (b), p. 4113.)

This misconstrues the reach of the verb "relate" in the passage in *Lent* quoted from *People* v. *Dominguez*. "If the condition of probation is not directly related to the crime, the condition may be invalidated." (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 628 [64 Cal.Rptr. 290].) If there is no indication that substance abuse by the minor played a direct role in the offense or was a factor in bringing the offense about, the sentencing court abuses its discretion in imposing search or testing conditions pertaining to such substance abuse. (E.g., *People* v. *Keller* (1978) 76 Cal.App.3d 827 [143 Cal.Rptr. 184].) The refusal to "consent" to a physical test for drugs "is not in itself criminal" and compelling such "consent" is not a measure "reasonably related to future criminality" in the absence of a showing that substance abuse by the minor has played a role in his misconduct or has even occurred. (*Ibid.*, also cf., e.g., *In re Todd L.* (1980) 113 Cal.App.3d 14, 20 [169 Cal.Rptr. 625]; *In re Jose R.* (1982) 137 Cal.App.3d 269, 278-280 [186 Cal.Rptr. 898]; *In re Layah K.* (1991) 229 Cal.App.3d 1496, 1502 [281 Cal.Rptr. 6], all justifying alcohol or narcotics search or testing conditions on the substance abuse of the minor.)

Nor can the urine testing condition be upheld on the ground there is information in the record that persons related to the minors have abused drugs or alcohol. The probation report notes that the defendants' biological father is a drug dealer, their grandmother was an alcoholic, and the district attorney asserted in argument that Jason, the boy whose fight precipitated these proceedings, was known to use alcohol and marijuana. However, as the minors note, they neither desire nor have they had contact with their biological father for many years, their grandmother died before they were born, and they are prohibited from any association with Jason.

In our society it is virtually always the case that a minor will have some connection to one or more persons who have abused alcohol or other drugs. This ubiquitous consideration does not warrant a urine testing condition without something indicating that the nature of the relationship affords an inference the minor is more likely to use drugs or alcohol than other minors. There is nothing of this nature in the present cases.

There is simply nothing in the record which links the conduct of the minors to drug or alcohol abuse. Accordingly, the trial court erred in imposing the urine testing condition.

Appellants' petitions for review by the Supreme Court were denied March 17, 1999. Mosk, J., and Kennard, J., were of the opinion that the petitions should be granted.