Filed 9/17/13  In re E.Z. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re E.Z., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.Z., a Minor,<br><br>    Defendant and Appellant. | G047605<br><br>(Super. Ct. No. ST001172)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed as modified.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan J. Beale and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

E.Z. was found to come within the provisions of Welfare and Institutions Code section 601[1] due to habitual truancy. The juvenile court adjudged E.Z. a ward of the court but did not remove her from the physical custody of her parent, S.D. (hereafter Mother). Instead, the court imposed several probation conditions, including a drug testing condition and a search condition. E.Z. contends the trial court erred in imposing these two conditions because they were not reasonably related to the offense of habitual truancy and there was no evidence she was using drugs or alcohol. We limit the drug testing condition to urine testing as required by law, and affirm the judgment in all other respects.

I

E.Z. was born on June 17, 1998. She enrolled in the seventh grade twice, once during the 2010-2011 school year, and a second time during the 2011-2012 school year. During E.Z.'s enrollment in Carr Intermediate School (Carr), she had four reported disciplinary incidents. First, on January 18, 2011, E.Z. was given a two-day suspension following a mutual combat fight. Second, on February 8, 2011, E.Z. and four other girls attacked another student and her mother. The school's principal and a counselor visited E.Z.'s home to tell her and Mother the video of the incident revealed the altercation appeared to be an incident of bullying. The principal recalled E.Z. was the only person involved in the attack who did not seem remorseful. E.Z. believed the victim got what she deserved. E.Z. indicated she would do it again under similar circumstances.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

The third incident also occurred in February 2011. E.Z. was caught possessing stolen property. The fourth incident occurred on April 26, 2011, when E.Z. got in trouble for disrupting the classroom. In her later testimony, Mother did not recall any of these disciplinary actions and denied ever receiving a call from the school regarding these incidents. At Carr, E.Z. was absent or tardy on three days in August and October 2011, and Mother was notified about the truancies on October 20, 2011.

In November 2011, E.Z. transferred from Carr to Spurgeon School (Spurgeon). E.Z. wanted to change schools because she claimed to be bullied at Carr by two girls and she felt Spurgeon would be safer because her cousin went there. On her last day at Carr, on October 19, 2011, a gang of five older girls threatened and hit E.Z. Weeks later when she enrolled at Spurgeon, the same group of five girls bullied and physically threatened E.Z.

On E.Z.'s first day attending Spurgeon, November 2, 2011, she and Mother met with the assistant principal to discuss E.Z.'s past truancy issues. After Mother explained she believed E.Z. had interpersonal relationship problems at Carr, the assistant principal suggested E.Z. change her appearance and eat lunch with her cousin in her office until E.Z. felt comfortable at the school. The assistant principal explained E.Z.'s appearance at the time, including a pompadour hairdo, shaved eyebrows, and heavy makeup, suggested she was in a gang and made her more susceptible to social problems. E.Z. appeared agitated and unreceptive to the assistant principal's suggestions.

On December 13, 2011, E.Z. went to school out of dress code, and she wore heavy makeup. The assistant principal sent E.Z. home and asked Mother to help E.Z. take off the makeup and clothes and return in dress code. E.Z. did not come back to school the next day.

E.Z. did not attend school most of the days from November 2011 through February 2012. A teacher visited E.Z.'s home three times during the 2011 school year to discuss E.Z.'s failure to attend school. Each time the teacher went to E.Z.'s home, she

3

was never there, and Mother did not know where she was. On December 13, 2011, the teacher met with Mother and told her if E.Z. came to school, they could address her bullying concerns and identify anyone she was scared of. One day in January 2012, Mother called the teacher to tell him E.Z. was not home, and he suggested she should call the police.

Both E.Z. and Mother asserted the truancies were because E.Z. continued to be bullied. E.Z. and Mother testified they told the school about the bullying, but the school administration did nothing except to say E.Z. needed to attend school. In February 2012, while E.Z. was still attending Spurgeon, five girls from Carr called E.Z. at home and threatened her. E.Z. and Mother reported this incident to the police.

On January 19, 2012, E.Z. and Mother were summoned to a Student Attendant Review Board (SARB) meeting but only Mother showed up. E.Z. refused to attend. During the meeting, Mother did not mention any bullying issues.

In February 2012, E.Z. enrolled in Lathrop School (Lathrop) but did not start attending until four months later (June 1, 2012). On her first day at Lathrop, E.Z. talked to the assistant principal about her troubles with bullying. The assistant principal attempted to make E.Z. feel safe by allowing her to enter school five minutes late and leave early to avoid any crowds on campus that intimidated E.Z. She also allowed E.Z. to eat lunch in her office and helped her with her wardrobe. E.Z. reported she was more comfortable at school and appreciated the advice.

In April 2012, Mother responded to a letter from a probation officer assigned to the truancy court. Mother told the probation officer that E.Z. had missed over one month of school, E.Z. did not want to attend the probation meeting, and Mother needed the court's help with E.Z.

Soon thereafter, the district attorney filed a petition alleging E.Z. came within the provisions of section 601, subdivision (b), because she was habitually truant from school from November 4, 2011, to February 14, 2012. At the court trial, E.Z.

4

denied the allegations, but the trial court found them to be true. The court declared E.Z. a ward of the court under section 601, subdivision (b). The court noted that despite the testimony of various witnesses regarding E.Z.'s past appearance, she was dressed appropriately in court. It concluded there was no question E.Z. was bullied at Carr, "[b]ut the problem arises when [E.Z.] did not take the advice of the school when they tried to set out a plan and instead failed to attend again." The court found Mother and E.Z. were not credible witnesses. The court ordered E.Z. to reside with Mother and granted probation on several conditions, including 40 hours of community service, 90 days of home arrest, a delay of 365 days to obtain a driver's license, and 10 classes of the Parent Empowerment Program (PEP). Relevant to this appeal, the court also imposed a drug testing and a search clause mandating: (1) "Minor to submit to drug testing as directed by the court/probation[;]" and (2) "Minor to submit your person, residence and property to search and seizure by any peace officer, probation officer or school official anytime day or night, with or without a warrant, probable cause or reasonable suspicion while on probation."

Defense counsel objected to the drug testing condition and observed the probation report failed to indicate E.Z. had a drug or alcohol problem. The court explained the probation officer did not sit through the trial and E.Z. exhibited "behavior that drugs could have been a part of it." The court indicated that if, after a month or two, testing was negative, it would terminate the testing condition. And when defense counsel objected to the search condition, the court explained, "When a case goes to trial and the person is denying that they had violated the law and then presents a defense which the court does not find at the end of the day to be credible, and a lot of other factors come out during the trial that the court believes are high risk factors for criminal or at least illegal . . . behavior . . . then it changes the court's position as to whether to go with a limited search or seizure or to expand it."

5

II

*A.  Drug Testing Probation Condition*

E.Z. contends the juvenile court abused its discretion when it imposed the drug testing probation condition because there was no evidence she used drugs or alcohol.  We find no abuse of discretion.

When a juvenile court places a minor on probation, it "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (§ 730, subd. (b).)  Section 729.3 authorizes alcohol and drug testing as a condition of probation, "If a minor is found to be a person described in [s]ection 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, may require the minor to submit to urine testing upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs."  "By providing that the court 'may' require urine testing, section 729.3 commits the decision to order testing in a particular case to the juvenile court's discretion."  (*In re Kacy S*. (1998) 68 Cal.App.4th 704, 708 (*Kacy S.*).)

As explained in *Kacy S.*, "section 729.3 is designed to detect conduct that is a precursor of criminal activity at the earliest possible time.  [Citation.]  Early intervention has a 'real and substantial relation to the object sought to be attained' [citation], because '[t]he young offender who exhibits the symptoms of future delinquency presents the most significant potential for rehabilitation. . . .'  [Citation.]"  (*Kacy S., supra,* 68 Cal.App.4th at p. 711.)  "[W]hen the minor is allowed to remain in the parental home, the environment in which the delinquency occurred, or possibly was even spawned, the court's ability to shape the influences on the minor is minimized.  That lessened ability creates a correspondingly greater need for careful monitoring.  Section

6

729.3 provides a means of doing so." (*Kacy S., supra,* 68 Cal.App.4th at p. 712, fn. omitted.).

We disagree with E.Z.'s argument the probation condition violates the rule in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*). In that case, the California Supreme Court determined, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" [Citation.] However, "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, *supra*, 15 Cal.3d at p. 486.) Unless all three *Lent* factors are present, a condition of probation will not be invalidated. (*Ibid.*)

The argument drug testing violates the *Lent* test when a minor does not have a history of drug or alcohol was considered and rejected in *Kacy S, supra,* 68 Cal.App.4th at pages 709-710. In that case, minor witnessed a physical altercation between two other students. (*Id.* at p. 708.) When a supervising teacher attempted to stop the fight, the minor stopped him and yelled profanities at the teaching staff. (*Ibid*.) The juvenile court imposed a probation condition of urine testing for drugs and alcohol despite no past evidence of either drug or alcohol problems. (*Id.* at p. 709.) The *Kacy S.* court explained that because it is unlawful for a juvenile to use alcohol or drugs, the testing condition ""relates to conduct which is . . . in itself criminal.'" [Citation.]" (*Id.* at p. 710.) Additionally, the testing condition was reasonably related to preventing future criminality. (*Ibid.*) "[I]n enacting section 729.3, the Legislature has found that 'alcohol and drug abuse' are 'precursors of serious criminality . . . .' [Citation.]" (*Kacy S, supra,* 68 Cal.App.4th at p. 710.) The court concluded that "[b]ecause the testing condition relates to criminal conduct and is reasonably related to future criminality, its imposition is

7

within the juvenile court's discretion even as measured by the *Lent* formulation. [Citations.]" (*Ibid.*)

The facts here are more compelling than those in *Kacy S.* The trial court found E.Z. was out of her mother's control, unsupervised during her truancy, and had adopted a street gang style of dressing. When she did attend school, E.Z. got in trouble for being the aggressor in a bullying incident and expressed no remorse. We adopt the well-reasoned analysis and holding articulated in the *Kacy S.* case and conclude that in this case the juvenile court did not abuse its discretion in imposing a drug testing condition because there was evidence in the record to conclude that E.Z.'s conduct indicates a risk for future drug use.

E.Z.'s reliance on *In re D.G.* (2010) 187 Cal.App.4th 47, 52-53 (*D.G.*), and *In re Daniel R.* (2006) 144 Cal.App.4th 1, 3-5 (*Daniel R.*), is misplaced. These cases are distinguishable because the probation conditions were not related to drug testing and were not aimed at preventing illegal conduct. Instead, *D.G.* banned the minor from the vicinity of schools, and *Daniel. R.* prohibited the minor from traveling to Mexico. (*D.G.*, *supra*, 187 Cal.App.4th at pp. 52-53; *Daniel R., supra*, 144 Cal.App.4th at pp. 3-5.) Walking near a school or traveling to Mexico is *not* illegal *unless* it is prohibited by a minor's probation conditions. In contrast here, if E.Z. were to engage in drug use, no matter whether the minor was breaking a probation condition or not, the drug use would be illegal.

On a final note, we conclude the probation condition must be modified to clarify the only kind of testing that can be imposed is urine testing. The probation condition broadly requires "Minor to submit to drug testing as directed by the court/probation." E.Z. contends, and the Attorney General agrees, the condition should be limited to urine testing. (*In re P.A.* (2012) 211 Cal.App.4th 23, 35.)

8

*B. Search and Seizure Probation Condition*

E.Z. also objects to the search and seizure probation condition. "California appellate courts have expressly upheld probation search conditions in particular juvenile court cases." (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203 (*Binh L*).) Section 730 provides: "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." "'Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile [citation].'" (*Binh L.*, *supra*, 5 Cal.App.4th at p. 203.)

The above-mentioned *Lent* test applies to the juvenile search condition as well. "'Because of its rehabilitative function, the juvenile court has broad discretion when formulating conditions of probation. "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." [Citation.] "[I]n planning the conditions of appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history. [Citations.]" [Citation.]' [Citations.]" (*Binh L.*, *supra*, 5 Cal.App.4th at p. 203.) The juvenile court's imposition of any particular probation condition is reviewed for abuse of discretion. (*In re Walter P.* (2009) 170 Cal.App.4th 95, 100.)

Here, the probation condition stated: "Minor to submit your person, residence and property to search and seizure by any peace officer, probation officer or school official anytime day or night, with or without a warrant, probable cause or reasonable suspicion while on probation." The probation officer recommended this probation condition after reporting E.Z. admitted to running away from home (once for approximately two days), she continued to miss school even after trial, and she lacked disciplinary action within her home. The court agreed with the probation officer's recommendation, concluding E.Z.'s unknown whereabouts for hours at a time was very

9

concerning.  The trial court determined E.Z.'s and Mother's testimony lacked credibility and it was troubled by the fact E.Z. denied all charges and responsibility.  The court further explained the combination of E.Z.'s denial of the charges, her lack of credibility, and other high risk factors such as bullying and habitual truancy made the imposition of a search and seizure condition reasonable.

We agree.  After taking into account E.Z.'s social history, habitual truancy, gang-like appearance, lack of remorse over a bullying incident, and possession of stolen property, the search and seizure condition appears not only reasonable, but may be instrumental in rehabilitating E.Z. into a successful adult life.  We conclude it was not an abuse of discretion to impose a search condition.

III

The probation condition that reads, "Minor to submit to drug testing as directed by the court/probation" is modified to read:  "Minor to submit to urine drug testing as directed by the court/probation."  In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

10