Filed 11/18/13  In re Oscar M. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re OSCAR M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. OSCAR M., Defendant and Appellant. | F066605 (Super. Ct. No. JJD064789) **OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Jennifer Shirk, Judge.

Gillian Black, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

After minor Oscar M. admitted a third probation violation, the juvenile court ordered him to serve a year in boot camp and imposed various probation conditions. On appeal, Oscar challenges probation condition No. 11, which requires him to submit to chemical testing, including submission of "blood, breath, urine, or saliva .…" He contends that only urine testing is permitted under the Welfare and Institutions Code and, further, any probation condition for chemical testing other than urine testing is unconstitutionally overbroad.

We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORIES

On June 17, 2010, the Tulare County District Attorney filed a single-count juvenile wardship petition against Oscar alleging the minor committed second degree robbery, a felony. (Welf. & Inst. Code, § 602,* Pen. Code, § 211.) After a contested jurisdictional hearing, the juvenile court found the petition true beyond a reasonable doubt. Specifically, Oscar and two other minors attempted to steal two, 12-packs of beer from a gas station convenience store; after being confronted by an employee of the store, Oscar hit the employee with the beer.

At a hearing on disposition on September 30, 2010, the juvenile court adjudged Oscar a ward of the court and ordered the maximum time he could be confined in secure custody to be five years, less two days for time served. Oscar was ordered to serve 365 days in the Youth Facility (sometimes referred to as "boot camp") under the supervision of the probation officer. The court also imposed probation terms and conditions.

In December 2011, the probation officer filed a notice of violation of probation alleging that Oscar failed to obey his nightly curfew, failed to obey his mother's directives, used marijuana, refused to attend school, and associated with gang members or

---

*Subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

2.

associates. Oscar admitted the allegations. At a hearing on disposition on December 22, 2011, the court expressed its concern that Oscar had substance-abuse issues with alcohol and drugs. The court ordered Oscar to continue as a ward of the court and to serve 90 to 180 days in the Youth Treatment Center Unit under the supervision of the probation officer. Probation terms and conditions were imposed.

In July 2012, a second notice of violation of probation was filed alleging that Oscar failed to report to the probation officer as directed and failed to abide by gang-related probation terms. Oscar was found in possession of gang indicia and he continued to associate with known Norteño gang members and associates. Oscar admitted the allegations but failed to appear for the hearing on disposition scheduled for November 20, 2012. A bench warrant was issued.

On December 18, 2012, the district attorney filed a third notice of violation of probation. It was alleged that, on December 14, 2012, Oscar (1) committed felony auto theft; (2) possessed a stolen vehicle, another felony; and (3) fled from police in the stolen vehicle at a high rate of speed and in willful and wanton disregard for the safety of persons and property. In addition, Oscar continued to associate with gang members. Oscar admitted the allegations, and the court accepted the admission.

According to a probation officer's report prepared for disposition, Oscar stated that he first used alcohol and marijuana when he was 15 years old, and he used to drink three beers a day on average and smoke two joints a day on average. Since his release from the residential portion of the Youth Treatment Center Unit, Oscar claimed he only smoked marijuana on one occasion and drank a couple beers on three occasions. He also reported that alcohol was involved in his latest probation violation, stating, "I wasn't thinking, I was drinking" at the time he stole the car.

A disposition hearing was held on January 3, 2013. The parties submitted the matter on the probation officer's report. The juvenile court ordered Oscar to continue as a ward of the court and to be committed to the care, custody, and control of the probation

officer for placement in the Tulare County Youth Facility for 365 days. The court's order specified that the maximum time Oscar could be confined was five years, less 579 days for time served. Once again, the court imposed probation terms and conditions. Oscar raised no objections to the probation conditions.

Each time the court ordered probation terms and conditions, probation condition No. 11 was imposed. This condition required the minor to "[s]ubmit to chemical testing in the form of, but not limited to, blood, breath, urine, or saliva on the direction of the probation officer or a peace officer."

Oscar filed a notice of appeal on January 29, 2013.

## *DISCUSSION*

Oscar challenges probation condition No. 11, which requires him to submit to blood, breath, urine, or saliva testing. He contends that a juvenile probation condition for chemical testing must be limited to urine testing under section 729.3. He also argues that probation conditions that (1) require withdrawal of blood and (2) permit testing of breath or saliva in addition to urine are unconstitutionally overbroad.

Initially, we reject the Attorney General's claim that Oscar's challenge has been forfeited because he did not appeal the first time the probation condition was imposed in September 2010. We agree that it is too late to challenge the disposition order from 2010. (See *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138 (*Shaun R*).) The juvenile court, however, imposed the challenged probation condition again as part of its disposition order of January 3, 2013, and Oscar timely appealed this order. His challenge to the January 2013 order, including the imposition of probation condition No. 11, has not been forfeited.†

---

†The Attorney General cites *Shaun R*., *supra*, 188 Cal.App.4th 1129, for her forfeiture argument. In *Shaun R*., the court held that the routine continuation of a previous order without change does not revive the right to appeal. (*Id*. at p. 1139.) "In our view, the 'all prior orders' provisions [of the new probation order] did not reimpose the court's previous orders. They expressly instructed the minor that the court's prior

4.

Our Supreme Court has explained that courts have broad authority to impose probation conditions for minors:

"The juvenile court has wide discretion to select appropriate conditions and may impose "'any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'''" [Citations.] In distinguishing between the permissible exercise of discretion in probationary sentencing by the juvenile court and that allowed in 'adult' court, we have advised that, '[a]lthough the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment .…" [¶] In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.…'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.)

Oscar cites section 729.3 for his position that urine testing, but not blood, breath, or saliva testing, is a permissible probation condition for a minor. Section 729.3 provides:

"If a minor is found to be a person described in Section 601 or 602[‡] *and the court does not remove the minor from the physical custody of his or her parent or guardian*, the court, as a condition of probation, may require the minor to submit to urine testing upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs." (Italics added.)

orders that did not conflict with the [new] Order 'remain[ed] in effect' or in 'full force and effect.'" (*Id.* at pp. 1139-1140.) In this case, the juvenile court's order of January 3, 2013, was not a routine continuation of the probation order from September 2010. Rather, the court imposed a new set of probation terms and conditions, which was not identical to the terms and conditions imposed in September 2010.

‡Section 601 applies to minors who persistently or habitually refuse to obey the reasonable and proper orders of their parents, violate any age-based curfew ordinance, or have four or more truancies within one school year. (§ 601, subds. (a) & (b).) These minors are within the jurisdiction of the juvenile court and may be adjudged wards of the court. (*Ibid.*) A minor adjudged a ward of the court under section 601 is commonly referred to as a "status offender[]" because he or she has not committed acts that would be considered criminal if committed by an adult. (*In re P.A.* (2012) 211 Cal.App.4th 23, 35 (*P.A.*).)

Since Oscar was removed from the custody of his parents, his reliance on section 729.3 is misplaced. The governing statute is section 730, which applies to minors who have been adjudged wards of the court under section 602. (§ 730, subd. (a).) Section 730 provides, in part:

> "When a ward … is placed under the supervision of the probation officer or committed to the care, custody, and control of the probation officer, the court may make any and all reasonable orders for the conduct of the ward …. The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).)

Here, Oscar was adjudged a ward of the court under section 602 and placed in the custody of the probation officer. As a result, the juvenile court had authority to "impose and require any and all reasonable conditions" that it determined to be "fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) Oscar's petition offense involved trying to steal beer, and he admitted to the probation officer that, before he entered treatment, he drank beer and smoked marijuana on a daily basis. Oscar's first probation violation involved marijuana use, and he admitted that he was drinking when he stole the car that resulted in his third probation violation. Under these circumstances, the imposition of the probation condition requiring Oscar to submit to chemical testing of blood, breath, urine, or saliva was within the juvenile court's discretion. The probation condition was reasonably related to Oscar's crime and his history of illegal use of alcohol and marijuana. Indeed, Oscar does not dispute that monitoring him to ensure he does not use illegal drugs or alcohol is a legitimate state interest.

Further, the court's discretion was not limited as to the type of chemical test it could require. An appellate court has recently rejected Oscar's position that section 729.3 limits the juvenile court's authority under section 730 to impose a probation condition of chemical testing other than urine testing.

6.

In *P.A.*, *supra*, 211 Cal.App.4th at page 27, the minor was adjudged a ward of the court under section 602 and placed on probation. The minor challenged the probation condition that he submit to chemical tests of blood and breath. He pointed to section 729.3, arguing that its express inclusion of urine testing implicitly excluded testing by any other means. (*P.A., supra,* at pp. 32-33.) The court observed that section 730, which also applied to the minor, was much broader and had been invoked to uphold a probation condition requiring "'"any tests"'" to determine alcohol or drug use. (*P.A., supra,* at p. 34, citing *In re Jose R.* (1982) 137 Cal.App.3d 269, 278-280.) The court also noted that sections 729.3 and 730 apply to different classes of minors. (*P.A., supra*, at p. 35.) Minors described in section 729.3 include minors who have not committed any crime, have not been removed from their parents' custody, and have not been adjudged wards of the court. Section 730, on the other hand, applies to minors who have violated the law and have been removed from their parents' custody. (*P.A., supra,* at p. 35.) Based on the plain language of sections 729.3 and 730, the court concluded that section 729.3 does not limit the court's discretion under section 730 to impose blood or breath testing.[§] (*P.A., supra,* at p. 40.)

We agree with the court's reasoning and conclusion in *P.A.* and therefore reject Oscar's claim that a juvenile probation condition for chemical testing must be limited to urine testing based on section 729.3.

Oscar next contends that the warrantless, nonconsensual withdrawal and testing of blood in the absence of emergency or exigency violates the Fourth Amendment.[**] He

---

[§]The court also reviewed the legislative history of section 729.3, which was enacted after section 730, and found no suggestion that the Legislature intended to limit the court's authority under section 730 to allow only urine testing. (*P.A.*, *supra*, 211 Cal.App.4th at pp. 34, 36-40.)

[**]Although the argument heading in Oscar's opening brief also mentions the Fifth and Fourteenth Amendments, he makes no argument concerning these amendments. Accordingly, these arguments have been waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant … asserts [a point] but fails to

relies on cases involving drivers suspected of driving while intoxicated.  (*Schmerber v. California* (1966) 384 U.S. 757, 768-772; *Missouri v. McNeely* (2013) ___ U.S. ___, 133 S.Ct. 1552.)  In *McNeely*, the United States Supreme Court held that, "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." (*Id.* at p. 1568.)  From this holding, he argues that the probation condition requiring him to submit to blood testing without a warrant is unconstitutional.

The Attorney General correctly points out that Oscar's argument fails to recognize the difference between the standard for Fourth Amendment searches applicable to the general, preconviction population, and the narrower Fourth Amendment standard applicable to juvenile offenders on probation.

> "As a general rule, '[adult] probationers "have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands."' [Citations.]  We believe this observation applies fully to juvenile probationers as well. [Citation.]  Conditions of probation provided by statute may—depending on the circumstances—require a juvenile probationer to attend school [citation], attend counseling with his parents [citation], respect a curfew [citation], submit to drug testing [citation], and participate in a drug or alcohol rehabilitation program [citation].  Certainly these conditions indicate the juvenile probationer's diminished privacy over his conduct and his person."  (*In re Tyrell J*. (1994) 8 Cal.4th 68, 85, overruled on another point in *In re Jaime P*. (2006) 40 Cal.4th 128, 130.)

In light of the diminished expectation of privacy of juvenile probationers, the drunk driving cases cited by Oscar, which involve the rights of adults who are not on probation or parole, are inapposite.  Courts, for example, routinely uphold the probation condition of warrantless searches in juvenile cases.  (*In re Binh L.* (1992) 5 Cal.App.4th

---

support it with reasoned argument and citations to authority, we treat the point as waived."].)

194, 203 [citing cases].) The probation condition of urine testing for drugs and alcohol is permissible even when the minor's offense does not involve drugs or alcohol and the minor's social history indicates no drug or alcohol use. (*In re Kacy S.* (1998) 68 Cal.App.4th 704, 709-711.) Further, the withdrawal of blood does not always require a warrant or exigent circumstances. (See *In re Calvin S.* (2007) 150 Cal.App.4th 443, 449 [rejecting juvenile offender's Fourth Amendment challenge to Pen. Code, § 296, which requires felons to provide biological samples, including blood specimens for DNA testing]; *Skinner v. Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 618-633 [upholding warrantless blood testing of railroad employees involved in train accidents under "special needs" doctrine] (*Skinner*).)

This court has explained that "when the state asserts jurisdiction over a minor, it stands in the shoes of the parents." (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033-1034.) "Thus, the juvenile court may impose probation conditions that infringe on constitutional rights if the conditions are tailored to meet the needs of the minor." (*Id.* at p. 1034.) As we discussed above, probation condition No. 11 requiring Oscar to submit to chemical testing was reasonably related to his crime and history of using drugs and alcohol. It was also tailored to meet his needs. Drug testing generally "advances the rehabilitation of young offenders by seeking to detect alcohol or drug use as a precursor of criminal activity in order to facilitate intervention at the earliest time." (*In re Kacy S., supra,* 68 Cal.App.4th at p. 711.) Here, testing was particularly needed because Oscar continued to smoke marijuana and drink alcohol after he was released from the Youth Treatment Center Unit.

Oscar argues that the probation condition allowing blood testing is overbroad because urine testing "fully satisfie[s]" the need for monitoring Oscar's drug and alcohol use. His argument assumes that urine testing is always less intrusive than blood testing, but this may not be so. The Supreme Court has observed "that the intrusion occasioned by a blood test is not significant, since such 'tests are commonplace in these days of

9.

periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.'" (*Skinner*, *supra*, 489 U.S. at p. 625.)  The procedures for taking a urine test, on the other hand, require the subject "to perform an excretory function traditionally shielded by great privacy, raise concerns not implicated by blood or breath tests."  (*Id.* at p. 626.)

In any event, the Attorney General rejects Oscar's claim that limiting the probation condition to urine testing alone would fully satisfy the monitoring function.  She argues that a probationer could use over-the-counter products to hide drug use in urine and saliva samples, which would cause false negatives and frustrate the purpose of probation, or a probationer could refuse to give a urine sample, causing delay or allowing the probationer to avoid the test.  In such instances, the probation officer's authority to use alternative means of chemical testing would fulfill the monitoring function of probation condition No. 11 in a way that urine testing alone does not.  In his reply brief, Oscar responds that "[t]here is nothing to stop a probation officer or peace officer from seeking a warrant to draw the probationer's blood, where there is evidence that the probationer is using illegal substances."  We find Oscar's position unpersuasive.  Chemical testing, including by means other than urine testing, is a reasonable probation condition tailored to Oscar's rehabilitation.  The law does not require a warrant under these circumstances.

Finally, Oscar argues that the Welfare and Institutions Code does not expressly permit breath or saliva testing, and these tests are unnecessary because urine testing is sufficient.  This argument fails for the same reasons his challenge to blood testing fails.  Oscar suggests that saliva testing raises "additional issues of relevance and reliability," but he cites no authority for his suggestion that saliva tests are unreliable.  To the extent his concern is that saliva may be used to test for DNA, we note that DNA testing is permissible in this case.  (*In re Calvin S.*, *supra*, 150 Cal.App.4th at p. 449.)

## *DISPOSITION*

The judgment is affirmed.

_____
Oakley, J.[††]

WE CONCUR:

_____
Kane, Acting P.J.

_____
Franson, J.

_____

[††]Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.

11.