Filed 12/23/14  P. v. Munoz CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039895 |
| Plaintiff and Respondent, | (Santa Clara County<br>Super. Ct. No. C1095700) |
| v. | |
| LUIS ALBERTO MUNOZ, | |
| Defendant and Appellant. | |

Defendant Luis Alberto Munoz challenges the trial court's imposition of a probation condition that prohibits his use of medical marijuana.  Defendant was convicted by plea of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)) and admitted an enhancement allegation that "a person not an accomplice" was present during the burglary (Pen. Code, § 667.5, subd. (c)(21)).  The court suspended imposition of sentence and granted three years probation.  Almost two years later, based on two new encounters defendant had with police, the court granted the probation officer's request to modify defendant's probation conditions to impose a condition prohibiting the use of alcohol or drugs, including medical marijuana.

Defendant contends the court abused its discretion when it imposed the no-medical-marijuana condition because (1) it had no relationship to his burglary offense and (2) it was not reasonably related to future criminality because there was no evidence he was misusing his medical marijuana card.  He also contends the trial court abused its

discretion when it imposed the condition as a "standard practice" for all probationers who have probation conditions that prohibit the use of alcohol or illegal drugs. Finally, he contends the condition is unconstitutionally vague and overbroad because it does not contain an express knowledge requirement. We conclude that the court did not abuse its discretion in imposing the no-medical-marijuana condition, but accept the Attorney General's concession that the condition must be modified to include a knowledge requirement. We will therefore modify the condition and affirm the order as modified.

## FACTS AND PROCEDURAL HISTORY

### December 2010 Burglary

In the late morning on December 23, 2010, defendant—who was then 18 years old—and an unidentified juvenile entered a home in Monte Sereno. The homeowner was out of town, but the tenant who lived in the downstairs apartment was home. The tenant heard a "heavy thumping noise," went up the stairs—just enough to peek inside his landlord's home—and saw two young males wearing hoodies walking through the living room.

Initially, the tenant thought they were workers hired by the homeowner, but since the situation seemed odd, he decided to investigate. The tenant looked for, and did not see, a contractor's truck. He noticed that a side door to the garage had been forcibly opened and saw a pile of personal property on the garage floor. The tenant called the police. He then saw one of the burglars and "bolted at him," yelling, "Robber, robber!" The burglar ran off through the front yard. The tenant then encountered the other burglar, who ran off through a creek in the back yard.

Police officers stopped defendant and the unidentified juvenile less than half a mile from the burglarized home. The teens, who had gotten rid of their hoodies and cut off their jeans to make them look like shorts, said they were jogging. The unidentified

2

juvenile had some of the homeowner's jewelry in his pocket. Defendant had a "packet" of cash ($275) in his pocket; attached to the cash was a post-it note with the homeowner's handwriting on it.

### Bail Forfeiture, Plea, and Sentencing

Defendant was arrested and posted bail. But he failed to appear for a court hearing in February 2011 and the court issued a bench warrant for his arrest. The bench warrant had a description of defendant, which stated that he had a tattoo of a marijuana leaf on his lower left leg. Bail was reinstated after defendant appeared.

As we have noted, defendant was charged with one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)), with an enhancement allegation that "a person not an accomplice . . . was present in the residence during" the burglary (Pen. Code, § 667.5, subd. (c)(21)). After the preliminary hearing, as part of a negotiated disposition, defendant pleaded no contest to the burglary charge and admitted the enhancement. Pursuant to the plea agreement, defendant agreed to waive 30 actual days of custody credits in exchange for a one-year county jail sentence "top/bottom" plus up to five years probation. The court advised defendant that the maximum possible sentence was six years in prison.

According to the probation report, defendant had several juvenile adjudications dating back to age 13, including findings that he had engaged in conduct that, if committed by an adult, would constitute first degree burglary. The probation report did not contain any information about defendant's drug or alcohol use, except a notation that chemical testing was ordered as a condition of probation in 2005 when defendant was 13 years old.[1] At sentencing in August 2011, the court suspended imposition of sentence

---

[1] The Attorney General's respondent's brief states that defendant's "extensive juvenile record included a sustained petition for . . . possession of marijuana." But the

and granted defendant three years formal probation on several conditions, including that he serve one year in county jail and waive 30 actual days of custody credits. The original conditions of probation did not expressly prohibit alcohol or drug use, but it required the then-19-year-old defendant to obey all laws, which would have prohibited his use of both alcohol and illegal drugs.

### *Probation Department's Request to Modify Probation*

On July 1, 2013, almost two years after the court granted probation, based on two encounters defendant had with police in 2013, defendant's probation officer asked the court to modify the conditions of defendant's probation to include "a substance abuse testing order" and an order prohibiting the use of alcohol or illegal controlled substances.

The first encounter occurred on February 25, 2013, when San José Police Officer James Pickens responded to a call about a stolen vehicle. During his investigation, Officer Pickens saw defendant, probationer Pablo Esparza, and Raul Huerta (who was wanted on a felony warrant) drive up to Esparza's house in a gray Acura. Officer Pickens smelled the "plain odor" of marijuana when he walked by the Acura. The officer searched Esparza's room and found stolen property that had been in the stolen vehicle and a " 'shaved key,' " which is "commonly used to punch the ignition" of a stolen vehicle and start the engine. Officer Pickens arrested Esparza for possession of stolen property and burglary tools. During the search, Huerta fled the scene.

---

summary of defendant's juvenile record in the probation report does not support that assertion. In his reply brief and at oral argument, defendant objected that the statement of facts in the Attorney General's brief is "prejudicially misleading" and that "this is an important misstatement in . . . an appeal that deals solely with the validity of a marijuana-related condition of probation." The deputy attorney general who appeared at oral argument acknowledged the error and apologized for misstating the record. We will rely on the record and will not consider the misstatement of fact in the Attorney General's brief.

4

When the officer asked defendant where he lived, defendant said he could not remember his address. Officer Pickens took defendant to his address of record to conduct a probation search, discovered that the apartment was empty, and released defendant at that address. Officer Pickens did not arrest defendant, but reported the contact to the probation department.

Later, when the probation officer asked defendant about the incident, defendant said he "met with friends to celebrate the birth of his child" and "the three of them smoked marijuana." The probation officer reprimanded defendant and told him "the use of illicit substances could lead to" revocation of his probation.

The second encounter occurred on March 29, 2013, when San José police officers responded to a report of vandalism and a possible burglary at a school. The officers observed broken windows and Sureño gang graffiti and found a backpack that contained a marijuana cigarette. The officers also saw a tan Acura with its lights off speeding away from the area. When the officers pulled the Acura over, there were three men inside, including defendant who was in the front passenger seat. The officers searched the car and found a small sword where defendant had been sitting and a baggie of methamphetamine (0.6 grams) in the sunroof. The driver, Pablo Ortiz, did not have a valid driver's license. Ortiz had a "burglary tool" (a shaved key) in his shoe. The third male, Victor Medina, admitted he was a Sureño gang member. After being advised of his *Miranda*[2] rights, defendant told one of the officers he had smoked marijuana that evening before getting together with Medina and Ortiz. All three young men told the officers they had planned to buy alcohol when the police stopped their car. Defendant was 20 years old at the time. Defendant was arrested for possession of illegal drugs (Health & Saf. Code, § 11377).

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

5

When defendant met with his probation officer, he was reprimanded for "his ongoing poor decisions," reminded that he was eligible for a prison sentence, and told "that is where he will most likely end up" if he continued to make poor decisions.

***Hearings on Probation Officer's Request to Modify Conditions of Probation***

On July 1, 2013, the court held a hearing on the probation officer's request to modify the conditions of defendant's probation. Defendant appeared, without counsel. The court (Judge Rene Navarro, retired) described the first proposed condition as: "You are to submit to chemicals tests as directed by a probation officer," and modified the second proposed condition to read: "You're not to use, abuse or be under the influence of alcohol or drugs." The court asked defendant whether he objected to the proposed modifications, to which defendant responded, "Yes. I got my cann[a]bis card." When the court asked defendant to "deliver the card," he said he did not have it with him. The court then stated, "I want you to deliver it to the probation department. As far as I'm concerned I don't recognize those cards. This court does not—to me that's still a drug. And you're not to use it or abuse it or be under the influence of it, because if you do, you're going to be in violation of probation." The court then asked defendant whether he accepted the new conditions of probation, and defendant said, "No."

The court set the matter for a further hearing on July 10, 2013; referred defendant to the public defender's office to obtain counsel; and ordered defendant to give his cannabis card to his probation officer within three days.

Defendant appeared for the July 10, 2013 hearing with counsel. Defense counsel advised the court (Judge Thomas Hastings, retired) that defendant did not object to the drug testing condition or the no-alcohol-or-drugs condition, "with the exception of medical marijuana." Defendant showed the court his medical marijuana card. Judge Hastings examined the card and returned it to defendant, but no one made a record of the information on the card. The prosecution objected to an exception for medical marijuana,

6

stating: "I know Judge Navarro's standard practice, he does not allow medical marijuana use while on probation." Judge Hastings stated that it was a "standard practice" for "people who are under supervised O.R." (own recognizance release) and "[t]hat if they want to be on O.R., they not smoke medicinal marijuana. So I think it applies to a probation." Defense counsel argued that the proposed condition was not appropriate under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) because it did not have a rational relationship to the underlying offense and that smoking medical marijuana would not lead defendant to commit a crime. In response, the court observed that when defendant was arrested for possession of methamphetamine while on probation, he admitted to smoking marijuana that evening. The court then granted the probation officer's request and modified defendant's probation to include the following conditions: (1) "the defendant shall submit to chemical testing as directed by the probation officer" and (2) "the defendant will not use or abuse alcohol or drugs, including medicinal marijuana." The court ordered defendant to surrender his medical marijuana card to the probation officer, which he did.

## DISCUSSION

Defendant contends the court abused its discretion when it imposed the probation condition that prohibited him from using medical marijuana because it had no relationship to his burglary offense and was not reasonably related to future criminality since there was no evidence he was misusing his medical marijuana card. He argues that the trial court abused its discretion when it imposed the condition "not because of specific concerns related to [defendant's] conduct, but simply because it was a 'standard practice' for all probationers." Finally, he contends the condition is unconstitutionally vague and overbroad because it does not contain an express knowledge requirement. Before addressing these questions, we consider whether the issues presented are moot due to the passage of time.

7

## I. Mootness

While processing this appeal in the fall of 2014, we noted that defendant's original probationary period should have ended in August 2014. We therefore asked the parties for supplemental briefing on the following questions: "Since the three-year probationary period should have ended on or about August 22, 2014, should this appeal be dismissed as moot? Are there any prejudicial collateral consequences that a successful appeal could ameliorate?"

Defense counsel advised us that defendant's probation had been extended to August 22, 2015. He also argued: "[T]hese unlawful probation conditions are a standard policy in this Superior Court. As such, it behooves this Court to give guidance to the lower courts regarding what is, and is not, appropriate in terms of determining probation conditions in this area."

Since defendant's probation has been extended, the appeal is not moot and we will proceed to the merits.

## II. Propriety of Probation Condition Forbidding Use of Medical Marijuana

### A. Standard of Review

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions. [Citations.] The primary goal of probation is to ensure '[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation. (Pen. Code, § 1202.7.)" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120 (*Carbajal*).) "[T]he Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and

8

rehabilitation of the probationer . . . .' (Pen. Code, § 1203.1, subd. (j).)" (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) We review the trial court's exercise of its discretion under the abuse of discretion standard. (*Ibid.*) " 'Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 578.)

Under the traditional test from *People v. Lent*, a "condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*Lent*, *supra*, 15 Cal.3d at p. 486, fn. omitted, overruled on other grounds in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-292.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation [condition]. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Olguin*, *supra*, 45 Cal.4th at pp. 379-380, citing *Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

Thus, "it is well settled that the trial court has the discretion to impose probation conditions that prohibit even legal activity."[3] (*People v. Brooks* (2010) 182 Cal.App.4th 1348, 1352 (*Brooks*).) And, as we shall explain, several "appellate courts have affirmed probation orders that prohibit the medical use of marijuana." (*People v. Hughes* (2012) 202 Cal.App.4th 1473, 1480 (*Hughes*), citing, *Brooks*, *supra*, 182 Cal.App.4th 1348 and other cases; see also *People v. Leal* (2012) 210 Cal.App.4th 829 (*Leal*).)

---

[3] Interestingly, defendant did not object to the imposition of the no-alcohol condition in the trial court. Nor does he challenge it on appeal. Defendant was 21 when the condition was imposed and could therefore legally consume alcohol.

9

### B. Case Law Considering Probation Conditions Prohibiting Medical Marijuana Use

In 1996, the electorate passed Proposition 215, the Compassionate Use Act (CUA), which was codified as Health and Safety Code section 11362.5 (all further undesignated statutory references are to this code). (*Brooks*, *supra*, 182 Cal.App.4th at p. 1350.) Subdivision (d) of section 11362.5 provides that "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

In *People v. Bianco* (2001) 93 Cal.App.4th 748, 751-752 (*Bianco*), the Third District Court of Appeal held that section 11362.5 is not a defense to a violation of a condition of probation that directs the defendant to "obey all laws." The court reasoned that marijuana use, even with a doctor's recommendation, is a violation of federal law. (*Id.* at p. 753.) The court also stated that, federal law aside, a probation condition can prohibit otherwise lawful conduct that is reasonably related to the defendant's offense. (*Id.* at pp. 753-754.)

In *People v. Mower* (2002) 28 Cal.4th 457, the California Supreme Court held that the defendant has the burden of proving a CUA defense to charges of possession and cultivation of marijuana, but that the defendant is only required to raise a reasonable doubt. (*Id.* at pp. 464, 476-483.) The court also stated, "As a result of the enactment of section 11362.5[,] [subdivision] (d), the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription." (*Id.* at p. 482.)

In *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, 1445-1447 (*Tilehkooh*), the Third District Court of Appeal revisited its decision in *Bianco.* In view of *Mower,* the *Tilehkooh* court held that *Bianco* was wrong in stating that possession of marijuana under

10

the CUA violated the defendant's probation because it violated federal law. The court also held that a criminal defendant may assert the CUA as a defense to the criminal sanction of probation revocation, but it did not sanction a CUA defense where there is a claim that the defendant's conduct "endangered others or that [the defendant] diverted marijuana for non[-]medical [uses]." (*Tilehkooh*, at pp. 1437, 1440.)

In 2003, the Legislature enacted the Medical Marijuana Program (MMP) (§ 11362.7 et seq.), which was designed to clarify the CUA and facilitate its enforcement. (*Leal*, *supra*, 210 Cal.App.4th at p. 838.) "At the heart of the MMP is a voluntary 'identification card' scheme" that, in addition to the CUA's protection against conviction for marijuana possession and cultivation offenses, allows medical marijuana patients and their caregivers to avoid unnecessary arrest. (*People v. Kelly* (2010) 47 Cal.4th 1008, 1014, (*Kelly*), fns. omitted.) The MMP also establishes a procedure whereby a probationer can request permission to possess or cultivate medical marijuana while on probation. Section 11362.795, subdivision (a) provides: "(1) Any criminal defendant who is eligible to use marijuana pursuant to [the CUA] may request that the court confirm that he or she is allowed to use medical marijuana while he or she is on probation or released on bail. [¶] (2) The court's decision and the reasons for the decision shall be stated on the record and an entry stating those reasons shall be made in the minutes of the court. [¶] (3) During the period of probation or release on bail, if a physician recommends that the probationer or defendant use medical marijuana, the probationer or defendant may request a modification of the conditions of probation or bail to authorize the use of medical marijuana. [¶] (4) The court's consideration of the modification request authorized by this subdivision shall comply with the requirements of this section."

After the MMP was enacted , the First District Court of Appeal addressed the propriety of a probation condition prohibiting the use of medical marijuana in *People v. Moret* (2009) 180 Cal.App.4th 839 (*Moret*). It was a fractured decision. The lead

11

opinion upheld a probation condition prohibiting medical marijuana use on the grounds of waiver, reasonableness under the *Lent* test, and the implication in section 11362.795, subdivision (a) that the trial court retained the discretion to prohibit the use of marijuana during probation despite the CUA. (*Moret*, at pp. 844-846, 850, 853.) The concurring justice relied solely on the ground of waiver. (*Id.* at pp. 857-858 (conc. opn. of Richman, J.).) The dissenting justice wrote there was no voluntary waiver, and the record did not support imposition of the condition. (*Id.* at pp. 860-862 (dis. opn. of Kline, P.J.).)

After *Moret*, the California Supreme Court held in *Kelly* that section 11362.77—which sets specific quantity limitations for possession or cultivation of medical marijuana—impermissibly amends the CUA to the extent it burdens a defense under the CUA to a charge of possessing or cultivating marijuana. (*Kelly*, *supra*, 47 Cal.4th at p. 1012.) But nothing in *Kelly* invalidated the probation provisions of section 11362.795, subdivision (a). (*Brooks*, *supra*, 182 Cal.App.4th at p. 1352.)

Two other courts have considered probation conditions that prohibit the use of medical marijuana. The Second and Fourth Districts both held that *Lent* and section 11362.795, subdivision (a) supported the conclusion that courts have the discretion to prohibit the use of medical marijuana as a condition of probation. (*Brooks*, *supra*, 182 Cal.App.4th at p. 1352; *Hughes*, *supra*, 202 Cal.App.4th at pp. 1480-1481.) Both cases held that probation conditions that barred medical marijuana use were reasonably related to the underlying offenses and to future criminality because the defendants in both cases had attempted to mask marijuana-related illegal activity as CUA-protected activity. (*Brooks*, at p. 1353 ["The condition removes any temptation to try to hide criminal possession of marijuana behind the CUA again"]; *Hughes*, at p. 1481.) *Hughes,* however, held that the trial court had erred, albeit harmlessly, by "focus[ing] on whether defendant had a need to use medical marijuana . . . [and] question[ing] the palliative efficacy of marijuana and . . . [whether] marijuana is . . . the only medication that could resolve [the] defendant's ailments and pain . . . . The trial court's concerns effectively question[ed] the

12

wisdom of allowing marijuana to be used for medicinal purposes. That issue was resolved in 1996 when voters of this state passed the CUA." (*Hughes*, at p. 1481.) Reviewing *Bianco*, *Mower*, and *Tilehkooh*, the *Brooks* court explained that those cases "simply conclude that the use of marijuana under the CUA is lawful in California and that such use does not violate the probation condition 'obey all laws.' [Citation.] Neither case holds that the trial court cannot ever impose a probation condition barring the use of medical marijuana." (*Brooks*, *supra*, 182 Cal.App.4th at p. 1351.)

Most recently, in *Leal*, the same division of the First District Court of Appeal that decided *Moret* reached a unanimous decision that set forth a three-step framework for evaluating probation conditions that prohibit the use of medical marijuana. "First, we examine the validity of any CUA authorization; second, we apply the threshold *Lent* test for interfering with such authorization; and third, we consider competing policies governing the exercise of discretion to restrict CUA use." (*Leal*, *supra*, 210 Cal.App.4th at p. 837.) The three-step *Leal* test for cases involving the use of medical marijuana thus incorporates and expands on the *Lent* test.

Both parties applied the *Leal* test to their legal analyses. We shall therefore assume, without deciding, that the *Leal* test applies in this case.

### C. Step One Under *Leal*—Validity of Medical Marijuana Authorization

Regarding step one—the validity of the defendant's medical marijuana authorization—the *Leal* court observed: "Not surprisingly, it seems that the enhanced protection from arrest [under the MMP] has proven irresistible to those illegally trafficking marijuana, for if there is even rough accuracy in the anecdotal estimate by the arresting detective in this case—that *nearly 90 percent* of those arrested for marijuana sales possess either a CUA recommendation or a card—then there is obviously widespread abuse of the CUA and the MMP identification card scheme by illicit sellers of marijuana. Ninety percent far exceeds the proportion of legitimate medical marijuana

13

users one would expect to find in the populace at large. For this and other reasons, it is impossible for us not to recognize that many citizens, judges undoubtedly among them, believe the CUA has become a charade enabling the use of marijuana much more commonly for recreational than for genuine medical uses. This widespread perception tests the judicial process. On the one hand, judges cannot, without danger to the integrity of their own enterprise, permit this attitude to undermine judicial fidelity to the right the CUA creates, which after all expresses the will of the people. But neither, on the other hand, does it mean courts may condone, even tacitly, conduct not clearly protected by the CUA." (*Leal*, *supra*, 210 Cal.App.4th at pp. 838-839, fn. omitted, original italics.) "The ready availability of marijuana cards is easily confirmed by a random perusal of cannabis Web sites advertising medical recommendations and identification cards as obtainable in an hour or less, for a modest price, with online appointments taken and walk-ins often welcome, and with online verification services provided. [Citations.]" (*Id.* at p. 839, fn. 2.)

A medical marijuana "card that reveals false information, fraud, or other violations of the CUA may certainly be challenged. [Citations.] But if a prosecutor determines from the card, and its identifying photo and user identification number, that the card is issued to the bearer, is not expired, and is valid according to county health department records (§ 11362.735, subds. (a)(1)-(5)), further inquiry can be limited at the step-one stage. Case law prevents a court from second-guessing the wisdom of voters in defining allowed uses of marijuana under CUA criteria [citations], which are broad enough to include arthritis or chronic pain (§ 11362.5, subd. (b)(1)(A)) and, under the 'somewhat broader' provisions of the MMP [citation], persistent muscle spasms and severe nausea (§ 11362.7, subds. (h)(9) & (h)(11))." (*Leal*, *supra*, 210 Cal.App.4th at p. 839, citing *Hughes*, *supra*, 202 Cal.App.4th at p. 1481 and other cases.)

The defendant in *Leal* was convicted of possession of marijuana for sale in two separate cases. One of the convictions included an arming enhancement. (*Leal*, *supra*,

14

210 Cal.App.4th at pp. 833-835.) The defendant claimed he used medical marijuana for hypertension and a post traumatic stress disorder, but the record suggested that he used his medical marijuana card "merely as a front for recreational uses or illicit sales obviously not permitted by the CUA or MMP." (*Id*. at pp. 836, 840.) Despite "ample reason to question" the defendant's claim of valid medical marijuana use under the CUA, "the prosecutor made no discernible effort to challenge the validity of the card [the defendant] produced." (*Leal*, at p. 839.) The court "therefore presume[d] that validity and proceed[ed] . . . to the step-two question of whether a nexus to his crimes or future criminality existed, under the *Lent* test, to allow judicial interference with [the defendant's] lawful use of medical marijuana." (*Leal*, at p. 840.)

Even though the hearing in this case took place more than eight months after *Leal* was filed, the prosecution made no effort to challenge the validity of defendant's medical marijuana card. Defendant showed his card to the court. But the card is not in the record and no one made a record of which physician prescribed medical marijuana, when it was prescribed, how long defendant had used medical marijuana, whether his card had expired, or even what medical conditions it was prescribed for. We shall therefore presume the card was valid and proceed to the step two inquiry under *Leal*. (*Leal*, *supra*, 210 Cal.App.4th at p. 840.)

### D. Step Two Under *Leal*—the *Lent* Test

Step 2 under *Leal* requires us to apply the traditional *Lent* test for determining the validity of a condition of probation. Considering the first prong under the *Lent* test— whether the prohibited conduct is " 'itself criminal' "—"it is settled that medical use of marijuana as authorized by the CUA, while still criminal under federal law [citation], is not conduct that is itself criminal for purposes of the *Lent* test." (*Leal*, *supra*, 210 Cal.App.4th at pp. 840-841, citing *Hughes*, *supra*, 202 Cal.App.4th at p. 1481 and other cases.) The issues are therefore whether the circumstances showed a sufficient

15

nexus (1) to defendant's offenses or (2) to future criminality.  Under the three-part *Lent* test, medical marijuana "use may be prohibited if a sufficient relationship appears under one or both of [these] elements."  (*Leal*, *supra*, at p. 841, citing *Olguin*, *supra*, 45 Cal.4th at pp. 379-380.)

The defendant in *Hughes*, for example, was found guilty of marijuana-related offenses after police officers found 38 marijuana plants in his truck during a traffic stop.  The defendant had a "physician's statement" for medical marijuana to treat "pain" and told the officers that he was taking the plants to a marijuana cooperative to trade them for finished marijuana that he would use for his medical needs.  But sales call sheets and other circumstances supported the conclusion that he possessed the marijuana for sale.  (*Hughes*, *supra*, 202 Cal.App.4th at pp. 1475-1476.)  Finding no abuse of discretion, the *Hughes* court reasoned that a probation condition prohibiting possession of marijuana, "even for medical use," had "a relationship to the crimes of which defendant was convicted, namely cultivating marijuana, possessing marijuana for sale, and transporting marijuana.  In addition, the probation term forbids conduct that is reasonably related to future criminality in that defendant purported to rely on the CUA to justify his possession of the marijuana plants he was transporting to sell in Los Angeles.  Consequently, [the court] could prohibit such possession as a condition of [the] defendant's probation."  (*Id.* at p. 1481.)

Similarly, the defendant in *Leal*, who was convicted of possessing marijuana for sale, "tried to hide behind his medical authorization to screen his illegal sales activities. . . .  In a shifting series of explanations, he told the arresting officers that one bag [out of four] was for his personal use, that he had the marijuana for his mother's cancer, and then, in an evident effort to account for the 72.6 grams, that he smoked an 'eighth' every hour and a half.  [His explanations were] accompanied by admissions that some of the drug was for 'business' and that he 'loves to smoke "weed," ' but it was attempted deception just the same.  The connection to future criminality was, . . . , that he was using

the CUA as a front for illegal sales, even if some of what he possessed might have been for his own medical use. If allowed to continue medical use, he would have an incentive to keep masking illegal activity with his CUA status, . . . ." (*Leal*, *supra*, 210 Cal.App.4th at pp. 841-842.) The court concluded that the defendant "was misusing [his] medical authorization in hopes of escaping arrest and prosecution." (*Id.* at p. 842.)

Defendant contends that neither element of the *Lent* test is shown here. We agree that there is no connection between the probation condition at issue and defendant's underlying burglary offense. Unlike the defendants in *Hughes* and *Leal*, who were convicted of drug-related offenses, defendant was convicted of first degree burglary and there was no evidence of any connection between the burglary and marijuana use. But, in our view, there was sufficient evidence that the condition was reasonably related to future criminality.

According to the bench warrant issued in February 2011, defendant—who was 18 years old at the time—had a tattoo of a marijuana leaf on his left leg. Two years later, in February 2013, during the police investigation in the stolen vehicle case, the officer noted the plain odor of marijuana emanating from a car defendant had just been riding in. Defendant did not produce a medical marijuana card or tell the officer he was using marijuana for medical purposes. And although defendant was not arrested in the incident, his companion was arrested for possession of stolen property and a burglary tool. Moreover, defendant was evasive with the officer, saying he could not remember his address. There is nothing in the record to suggest that when the probation officer asked defendant about this incident, defendant told him he had a medical marijuana card or that he used marijuana for medicinal purposes. Instead, defendant said he smoked marijuana with his friends that day to celebrate the birth of his child. That was clearly an illegal, recreational use of marijuana, not a medicinal use.

In March 2013, when defendant was picked up after the vandalism and burglary of a school, he was arrested for possession of methamphetamine. There was Sureño graffiti

17

at the school and defendant was with an admitted Sureño gang member. A back pack that contained a marijuana cigarette was found at the burglary scene and defendant told the officer he had smoked marijuana earlier that evening. Nothing in the record suggests defendant showed the police officer a medical marijuana card or said he had used marijuana for medical purposes.

The first time defendant mentioned having a medical marijuana card was at the July 1, 2013 hearing on the request to modify his probation, more than three months after his last police contact. When the court questioned defendant on that occasion, defendant did not say why he had obtained a medical marijuana card or state that he needed medical marijuana for any particular medical condition. By that time, the probation officer had admonished defendant twice that his use of illicit substances and poor decision-making could result in the revocation of his probation.

In summary, in 2013, while on probation, defendant was involved in two criminal investigations, one of which resulted in his arrest for possession of methamphetamine. Both times, he had used marijuana shortly before the police contact. Defendant admitted the recreational use of marijuana the first time and there was no evidence or claim that he used marijuana for medical purposes the second time. And when the court imposed the no-medical-marijuana condition, it expressed concern about defendant's future criminality, observing that defendant admitted marijuana use when he was arrested for possessing methamphetamine. As in *Hughes* and *Leal*, the record suggests defendant obtained a medical marijuana card to mask his illegal use of the drug and to avoid revocation of his probation due to continued illegal marijuana use. We therefore conclude that since the probation condition at issue does not require or forbid conduct that is "not reasonably related to future criminality," it is valid under *Lent*. (*Lent*, *supra*, 15 Cal.3d at p. 486 [probation condition is valid unless it . . . (3) requires or forbids conduct which is "not reasonably related to future criminality"].) We therefore proceed to the third step of the *Leal* test.

18

### E.  Step Three Under *Leal*—Balancing the Needs

*Leal* reasoned:  "Finding discretion under the *Lent* test to interfere with a probationer's CUA use of marijuana, however, does not mean that the court *must* impose an interfering condition, for *discretionary* action is, by definition, something permitted, not required."  (*Leal*, *supra*, 210 Cal.App.4th at p. 843, original italics.)  "The step-three exercise of discretion is vital in limiting medical use of marijuana, for it entails a unique balance of competing public policies.  On one hand, the step-one conclusion that a defendant has CUA authorization implicates a voter-compelled policy that qualified patients be allowed to alleviate medical problems through the use of marijuana.  On the other hand, the step-two conclusion that the relationship of that lawful use to the crimes the defendant committed, or his or her future criminality, raises a competing policy consideration:  the need to rehabilitate the defendant and protect the public during his or her release on probation.  The resolution of these competing policies necessarily requires weighing the needs of one against the other before deciding whether and how much to limit the lawful conduct."  (*Id.* at p. 844.)

Defendant argues that we need not engage in step three balancing under *Leal*, since the no-medical-marijuana condition is not valid under *Lent*.  Since we disagree with that conclusion, we shall proceed with step three of the analysis.

Step three balancing "will vary widely from case to case.  In an extreme case of need for medical marijuana, for example, the drug might be an effective and least-harmful way to alleviate debilitating suffering from end-stage pancreatic cancer.  [Citation.]  . . .  It is also hard to imagine that a probation order banning a person so afflicted from using medical marijuana pursuant to the CUA would not constitute an abuse of discretion despite a *Lent*-based nexus to the selling offense, for example, where there was little or no further threat to society.  Far more commonly, of course, the rehabilitative/protective need could outweigh a lesser medical need, or one that could be

19

efficaciously met by alternative means." (*Leal*, *supra*, 210 Cal.App.4th at p. 843.) "We stress that this third step balancing of competing needs does not allow a court to question the wisdom of voters or the validity of an unchallenged card or the underlying medical authorization. The requisite balancing contemplates a judicial assessment of medical need and efficacy based upon evidence: the defendant's medical history, the gravity of his or her ailment, the testimony of experts or otherwise qualified witnesses, conventional credibility assessments, the drawing of inferences, and perhaps even medical opinion at odds with that of the defendant's authorizing physician." (*Ibid.*)

The step-three balancing is not difficult in this case, since there was no evidence regarding defendant's medical need for marijuana other than the fact that he had a medical marijuana card. "That card meant only that [defendant] met a minimal threshold, in a recommending physician's view, of getting some unquantified 'benefit from the use of marijuana' (§ 11362.5, subd. (b)(1)(A)) to help alleviate conditions within the broad sweep of the CUA and MMP (*ibid.*; § 11362.7, subds. (g)-(h)), which did not require [defendant] to suffer a serious illness [citation]." (*Leal*, *supra*, 210 Cal.App.4th at p. 845.) Unlike other cases, there is no record of what medical condition could be alleviated by defendant's use of medical marijuana. Defendant did not present any medical reports, physician or lay testimony, or even tell the court why he needed medical marijuana. The record does not "shed light on the severity of [his] ailments, the efficacy of treating them with medical marijuana, or the feasibility and efficacy of any alternative treatments that may be available." (*Ibid.*) Defendant was the only party able to produce evidence of the medical benefits marijuana provided him and any alternative remedies he may have tried, yet he offered no such evidence. (*Ibid.*) And the fact that he (1) had a marijuana leaf tattoo on his leg more than two years before he mentioned CUA use, (2) had used marijuana shortly before both contacts with police, (3) admitted that he smoked marijuana to celebrate the birth of his child, and (4) only requested that he be allowed to use medical marijuana after he was caught using marijuana for non-medicinal

20

purposes, creates substantial doubt that defendant's use of marijuana was genuinely "medical." (*Ibid.*) Defendant therefore cannot demonstrate that the court abused its discretion under step three of the *Leal* test.

Defendant argues that the trial court abused its discretion when it imposed the condition "not because of specific concerns related to [defendant's] conduct, but simply because it was a 'standard practice' for all probationers." Indeed, Judge Navarro said, "As far as I'm concerned I don't recognize those cards." And Judge Hastings said it was "standard practice" for "people who are under supervised O.R." that "they not smoke medicinal marijuana. So I think it applies to a probation." Case law indicates that trial courts cannot establish a blanket policy prohibiting the use of medical marijuana as a condition of probation. Instead, each case must be evaluated on an individual, case-by-case basis. (See *Leal*, *supra*, 210 Cal.App.4th at pp. 837-845, 843 [step three balancing "will vary widely from case to case"]; *Hughes*, *supra*, 202 Cal.App.4th at pp. 1479-1481; *Brooks*, *supra*, 182 Cal.App.4th at pp. 1352-1353.)

Despite statements suggesting the court had a standard practice of prohibiting medical marijuana use while on probation, the court scheduled a hearing on the matter, gave defendant notice of the hearing, "refer[red him] to the public defender's office" to see if he "qualif[ied] for their services," and conducted a hearing on the issue during which defendant failed to provide any support for his claim that he needed to smoke marijuana for medicinal purposes. Thus, the record shows the court was open to considering defendant's objection to the no-medical-marijuana condition. Furthermore, when the court imposed the no-medical-marijuana condition, the judge commented on the link between defendant's marijuana use and future criminality. And finally, we review the trial court's decision, not its reasoning, and will affirm a judgment or order that reached the correct result, " 'regardless of the considerations [that] may have moved the trial court to its conclusion.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) As we have already explained, the condition was valid under the *Leal* test. Based on the record in this

21

case, the trial court did not abuse its discretion when it imposed the no-medical-marijuana condition of probation.

Since the no-medical-marijuana condition imposed met the requirements of *Leal*, we will affirm the order modifying defendant's conditions of probation. However, as we shall explain in the next section, the condition must be modified to include a scienter requirement.

### III. *Vagueness and Overbreadth*

Defendant argues that the probation condition that provides that he "will not use or abuse alcohol or drugs, including medical marijuana" is unconstitutionally vague and overbroad because it does not include an express knowledge requirement. The Attorney General agrees and urges us to modify the condition to include an express knowledge requirement.

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K*. (2007) 40 Cal.4th 875, 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) That is, the defendant must know in advance when he or she may be in violation of the condition.

In *People v. Rodriguez* (2013) 222 Cal.App.4th 578, 582, this court considered "whether various probation conditions [were] unconstitutionally vague and overbroad without an explicit scienter requirement." The probation conditions at issue included "condition 8," which prohibited the use or possession of "alcohol, intoxicants, narcotics, or other controlled substances without the prescription of a physician . . . ." (*Id.* at pp. 583, 592.) This court held: "To the extent condition 8 reinforces defendant's obligations under the California Uniform Controlled Substances Act, the same knowledge element which has been found to be implicit in those statutes is reasonably

22

implicit in the condition." (*Id.* at p. 593.) But the court also recognized "that the proscriptions in condition 8 are not limited to substances regulated by statute, but extend to alcohol and the generic 'intoxicants.' Because the latter category is susceptible of different interpretations, which may include common items such as adhesives, bath salts, mouthwash, and over-the-counter medicines, the addition of an express knowledge requirement will eliminate any potential for vagueness or overbreadth in applying the condition." (*Id.* at p. 594.) The court observed: "[I]t is no crime to ingest a drug involuntarily, for example, if someone secretly spiked the punch at a party." (*Id.* at p. 593.)

Courts often order modification of probation conditions to incorporate a scienter requirement where a probationer could unknowingly engage in the prohibited activity. (*People v. Moses* (2011) 199 Cal.App.4th 374 [modifying probation conditions to include both actual and constructive knowledge requirements]; see also *People v. Turner* (2007) 155 Cal.App.4th 1432; *In re Kacy S.* (1998) 68 Cal.App.4th 704, 713.) Since the probation condition at issue in this case prohibits both alcohol and medical marijuana use—which are not illegal—and it is possible that defendant might unknowingly ingest something that has been "laced with" marijuana or "spiked with" alcohol, the addition of an express scienter requirement will eliminate any potential for vagueness or overbreadth. Accordingly, we will accept the Attorney General's concession and order the condition modified to incorporate an express knowledge requirement.

The condition at issue also prohibits the use of "drugs." The word "drugs" is broad enough to prohibit the use of over-the-counter medication, as well as drugs prescribed by defendant's physician, a result the trial court surely did not intend. We will therefore modify the condition to prohibit the use of "illegal drugs." Finally, we will change the word "medicinal" to "medical" so that the condition tracks the language used in the statutes. (See e.g., §§ 11362.5, 11362.79, 11362.795.)

23

## DISPOSITION

The probation condition at issue is modified as follows: "the defendant will not use or abuse any substance that he knows or should know contains alcohol or illegal drugs, including medical marijuana." As modified, the July 10, 2013 order modifying the conditions of defendant's probation is affirmed.

_____
Márquez, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Grover, J.