Filed 9/3/20  In re D.M. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E074131 |
| Plaintiff and Respondent, | (Super.Ct.No. J276636) |
| v. | OPINION |
| D.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Winston S. Keh, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charlese C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

1

**FACTUAL AND PROCEDURAL HISTORY**

A.      PROCEDURAL HISTORY

On April 6, 2016, the juvenile dependency court declared defendant and appellant D.M. (Minor) a dependent of the court.  The court removed Minor from his mother's custody.  On March 1, 2017, the dependency court appointed Minor's uncle and aunt as his guardians and placed him in their custody.

On July 27, 2018, an amended petition under Welfare and Institutions Code section 602 alleged that Minor committed attempted robbery under Penal Code sections[1] 664 and 211; resisted arrest under Penal Code section 148; committed grand theft under Penal Code section 487; and committed robbery under Penal Code section 211.

On August 14, 2018, Minor admitted that he committed felony grand theft under section 487, subdivision (c).  The juvenile court then declared Minor a ward of the court, imposed probation, and placed him in the custody of his uncle and aunt (Guardians).

Five months later, on January 28, 2019, another petition under Welfare and Institutions Code section 602 was filed against Minor.  The petition alleged that Minor committed robbery under Penal Code section 211, carjacking under Penal Code section 215, subdivision (a), and assault by means likely to produce great bodily injury under Penal Code section 245, subdivision (a)(4).

---

[1]  All further statutory references will be to the Penal Code unless otherwise specified.

On February 13, 2019, Minor admitted the robbery allegation and the court dismissed the remaining allegations. The court continued Minor as a ward, placed him on probation, and returned him to the custody of Guardians.

On October 7, 2019, the People filed a petition alleging that Minor had violated probation conditions in that he failed to report to a program to which he had been referred, the "Council for Boys and Young Men" (Boys Council); had not reported to his probation officer; had not attended school; had been using marijuana; and had violated curfew. Also on October 7, a wardship petition was filed. It alleged that on September 18, 2019, Minor committed burglary under section 459 at a high school.

On October 22, 2019, Minor admitted the allegation in the petition that he violated probation, and the juvenile court granted the motion by the prosecution to dismiss the remaining allegations. On November 7, 2019, the juvenile court ordered probation to maintain custody of Minor and for Minor to be detained in juvenile hall pending the location of a suitable foster care placement for him.

On November 7, 2019, Minor filed a timely notice of appeal.

B.    FACTUAL HISTORY

On April 21, 2018, around 5:30 p.m., Minor and several other juveniles threatened to rob a street vendor. The juveniles and Minor, who was 12 years old, chased the vendor until the vendor flagged down the police.

3

On July 25, 2018, as a female victim walked to her car in a parking lot, Minor and a juvenile cohort approached her from behind. Both juveniles grabbed the victim's purse and ran. Some of the victim's property was recovered along the route where the juveniles ran. Area residents detained the juveniles. The victim's cell phone was in the possession of Minor's cohort.

On January 28, 2019, one week after Minor turned 13, he approached another victim outside a high school administration building with six other males. Minor took the victim's car key and the other males took the victim's wallet and cell phone. When the victim tried to get the property back, they punched and kicked the victim in the head and body. Minor crashed the victim's car into a handicap sign.

On June 26 and October 4, 2019, Minor admitted smoking marijuana. On July 31, 2019, when a probation officer conducted a compliance check at Minor's residence, Guardians stated that Minor left the residence on July 25, 2019 and had not returned. On August 7, 2019, Guardians reported that Minor returned to the residence on August 2, 2019.

On August 31, 2019, school district police officers responded to a high school around 1:20 a.m. Officers found five suspects, including Minor, in the school building. Minor had a crow bar and was prying the door to a classroom open. Minor "was found in possession of items stolen from/belonging to the school site."

On September 18, 2019, Minor was referred to Boy's Council but had not reported. On September 20, 2019, a probation officer conducted a compliance check at Minor's residence; he was not home. Minor was directed to report to his probation

officer; he failed to report. Minor's school reported that Minor had not been attending school.

**DISCUSSION**

A.     THE JUVENILE COURT PROPERLY REMOVED MINOR FROM THE CUSTODY OF GUARDIANS

Minor contends that "the general dispositional order removing the minor from the home and placing him in a foster care facility was an abuse of discretion." For the reasons set forth below, we disagree.

    1.     *ADDITIONAL HISTORY*

On April 6, 2016, Minor was declared a dependent of the court and removed from his mother's custody due to emotional abuse and neglect. Minor was placed with Guardians. Specifically, mother's "history of substance abuse, including . . . methamphetamine and marijuana during pregnancy" and her "suicidal behaviors in the presence of the children" required that Minor and his siblings be removed to avoid future harm or neglect. On March 1, 2017, the juvenile court adopted Minor's permanent plan, dismissed and terminated dependency, and appointed Guardians.

On July 30, 2018, Minor appeared before the juvenile court on a wardship petition filed on July 27, 2018. Guardians were present at the hearing. The court found that the continued detention of Minor was in his best interests and continued placement in the home was contrary to his welfare.

5

On August 14, 2018, Minor admitted an amended allegation of felony grand theft. The court declared Minor a ward and returned him to the custody of Guardians on terms and conditions of probation.

On January 28, 2019, another petition was filed. It alleged new crimes and a violation of probation. The court ordered Minor detained. On February 13, 2019, Minor admitted the robbery allegation. The court continued Minor as a ward, ordered him to serve 30 days in custody, and placed him back with Guardians.

On October 7, 2019, a petition for violations of petition, and another petition for burglary were filed against Minor. The following day, the juvenile court ordered Minor detained in juvenile hall because he was a flight risk and violated probation. The court found that continuance in the home was contrary to Minor's welfare.

On October 22, Minor admitted using marijuana as a probation violation. The court dismissed the other probation violations and the allegation of burglary. The court characterized this plea deal as a "gift." The juvenile court indicated that it had serious concerns about Minor's behavior and the supervision he was receiving. The court noted that despite Minor's age, it would consider placement outside the home at the disposition hearing.

On October 17, 2019, the probation department filed a report. In the report, the probation officer stated that Minor violated the terms and conditions or probation for, among other things, failing to "[a]ttend a counseling program, class or sanctioned intervention program as directed." The probation department noted "[t]here is no doubt the youth needs help dealing with his anger and with making appropriate decisions." The

probation department, however, recommended that Minor be continued on probation and "referred to individual and family counseling to address the underlying issues" because he was still "amenable to formal probation." The probation department also recommended that Minor participate in classes for petty theft and victim awareness to give him "insight into his behavior" and "deter him from committing any new law violations."

On October 29, 2019, the juvenile court held a contested disposition hearing. At the hearing, the prosecutor disagreed with the probation department's recommendation and argued that Minor should be removed from Guardians and placed in foster care.

Probation Officer Martinez testified. He stated that Minor had been a ward since August 14, 2018, and had been residing with Guardians since 2016. During that time, Minor had been before the juvenile court on three felony petitions. Minor admitted two felonies including a robbery. Minor also admitted to the probation officer that Minor associated with a criminal street gang, and went by the moniker, "Dizzy Bkone." Minor admitted having anger issues and was reported to be using gang terms and signs while in juvenile hall. Guardians told the probation officer that Guardians were aware Minor was using marijuana but did not believe Minor was involved in a gang. Minor had not been to school for six weeks and failed three classes, including physical education.

Probation Officer Martinez testified that he recommended continuing Minor on probation because he believed Minor to be a follower. The officer also stated that he had worked with Minor for only four months. The officer believed with more time, Minor's behavior may improve. The officer, however, acknowledged that other probation officers

7

had worked with Minor and that he stated in his report: "It is evident the youth has no respect for the law, the court, or his grant of probation, as he is unwilling to follow the law or basic terms and conditions." The officer also acknowledged that Minor was referred to Boy's Council, which Minor failed to attend. Officer Martinez believed that Minor's uncle had been a good role model for Minor. Minor, however, did not listen to his uncle. The officer testified that his recommendation was based on Minor's young age, that he was removed from his mother's custody when he was 10, and that he had been making some progress. The officer believed that with another chance, Minor's behavior would improve.

Minor's uncle testified. He stated that he was unaware that Minor was associating with gang members. Moreover, the uncle did not know Minor was not attending school until the school called the uncle. The uncle did suspect Minor was using marijuana. Minor's uncle testified that Minor's behavior was bad when he first came to live with Guardians but had improved recently.

The prosecutor argued that he disagreed with the probation department's recommendation. The prosecutor noted that Minor continued to violate the law while on probation; failed to attend the one program to which he was referred; and failed to report, attend school, and abide by curfew. Because the arrangement with Guardians had not worked to rehabilitate Minor, the prosecutor argued that Minor needed "a new environment away from the gangs, away from the marijuana."

Minor's counsel argued that removing an impressionable 13-year-old from the only stable and safe home he has known and placing him in a foster care facility with other emotionally scarred and potentially more criminally experienced youths would only undermine rehabilitation, not foster it. Moreover, other than Minor's failure to report to a program, probation or to school, or abide by curfew, there was no evidence, other than Minor's admissions, that he consumed marijuana or was a member of a criminal street gang.

The juvenile court indicated that it took Minor's age into consideration and believed that Guardians were doing the best they could. The court noted that Minor's criminal history involved multiple robberies and a recent burglary of a school. The court was concerned that Guardians were unaware of Minor's gang activity and failure to go to school and were suspicious that minor was using marijuana. The juvenile court called it a "recipe for disaster." The court acknowledged the recommendation of probation but noted that the probation officer had only supervised Minor for a few months. Minor's placement with Guardians was not working. The court indicated that it pained the court to take Minor out of Guardians' home, but an alternate placement was necessary under the circumstances. The court found that Minor's welfare required that he be taken from the current placement, and that the care, custody and control of Minor be placed with probation.

On November 7, 2019, the juvenile court placed Minor in the custody of probation and adopted the findings of the placement order.

## 2. *LEGAL BACKGROUND AND STANDARD OF REVIEW*

We review the juvenile court's placement decision for abuse of discretion. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473; *In re Athena P.* (2002) 103 Cal.App.4th 617, 628-529.) " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' " (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) Unless no rational judge could have arrived at the same conclusion, the finding must be upheld. (*Athena P.*, at p. 629.) When determining whether there was such substantial evidence, "we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.)

We are mindful that the "juvenile court's goals are to protect the public and rehabilitate the minor." (*In re Kacy S.* (1998) 68 Cal.App.4th 704, 711.) Section 202, subdivision (b), provides: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. . . . When the minor is no longer a ward of the juvenile court, the guidance he or she received should enable him or her to be a law-abiding and productive member of his or her family and the community." Moreover, section 727.1, subdivision (a), provides: "If the court orders the care, custody, and control of the minor to be under the supervision of the probation officer for foster care

10

placement pursuant to subdivision (a) of Section 727, the decision regarding choice of placement . . . shall be based upon selection of a safe setting that is the least restrictive or most familylike, and the most appropriate setting that . . . is available, in proximity to the parent's home, consistent with the selection of the environment best suited to meet the minor's special needs and best interests. The selection shall consider, in order of priority, placement with relatives, tribal members, and foster family, group care, and residential treatment pursuant to Section 7590 of the Family Code."

The statutory scheme guiding the juvenile court in its treatment of juvenile offenders " ' " 'contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement.' " ' " (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 577.) However, "less restrictive placements do not actually have to have been tried." (*Ibid.*) "[I]f there is evidence in the record to show a consideration of less restrictive placements was before the court, the fact the judge does not state on the record his consideration of those alternatives and reasons for rejecting them will not result in a reversal." (*Ibid.*) Reversal is unwarranted if there is "some evidence to support the judge's implied determination that he sub silentio considered and rejected reasonable alternative dispositions." (*Ibid.*) Evidence relevant to the disposition includes, but is not limited to, the age of the minor, the circumstances and gravity of the offenses committed, and the minor's previous delinquent history. (§ 725.5.)

We note that section 726, subdivision (a), in relevant part, provides: "no ward or dependent child shall be taken from the physical custody of a parent or guardian, unless upon the hearing the court finds one of the following facts: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (2) That the minor has been tried on probation while in custody and has failed to reform. [¶] (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian." The findings pursuant to section 726 need not be made in the precise language of the section, as long as the substance of the findings is impliedly stated in the record. (*In re Michael W.* (1980) 102 Cal.App.3d 946, 953, fn. 4.)

### 3. *ANALYSIS*

In this case, the record, as noted in detail *ante*, shows that the juvenile court considered the probable benefit and harm to Minor if he remained with Guardians. A juvenile dependency court first placed Minor in the custody of Guardians on March 1, 2017. A year later, on April 21, 2018, Minor participated in the attempted robbery of a street vendor. A few months after that, on July 25, 2018, Minor participated in a second robbery wherein Minor grabbed the purse of a female victim. On August 14, 2018, the court declared Minor a ward.

Thereafter, on January 28, 2019, one week after Minor turned 13, he participated in the robbery of a student at a high school. Minor not only participated in punching the victim, Minor took the victim's car keys and crashed the victim's car. One month later,

Minor admitted the felony robbery allegation and was continued as a ward with probation conditions.

On July 31, 2019, when probation conducted a compliance check at Minor's house, Guardians reported that Minor left the residence a week prior and had not returned. Probation referred Minor to Boy's Council but Minor never attended.

On August 31, 2019, Minor was at a high school at 1:20 a.m. with a crow bar prying the door to a classroom open; he had school property in his possession.

On September 20, 2019, when probation conducted another compliance check, Minor was not home. Minor was directed to report to his probation officer; Minor never reported. Moreover, Minor had not been attending school.

Minor admitted to his probation officer that he associated with the a criminal street gang, went by "Dizzy Bkone," and that he smoked marijuana.

All the conduct by Minor sent forth *ante* occurred while he was residing with Guardians, and while he was on probation. Based on the facts of this case, it is evident that Minor was given numerous chances to rehabilitate before being moved from Guardians' home. Minor had resided with his Guardians for three and a half years. During this time, he committed numerous serious crimes and violated the terms of his probation. Substantial evidence supports the court's findings that placement was in minor's best interest.

When making its ruling, the juvenile court carefully and thoroughly analyzed Minor's placement. The court noted: "I want both of you to know that the minor's age weighs heavily in my mind. He is a 13-year-old young man. The Court has considered

that he was taken out of his bio parent's home and placed in the custody of his uncle[,] who strikes me as a decent and respectful gentleman. And he strikes me as someone who is doing everything he can to raise [Minor] and his sibling. That is not lost on the Court." The court also noted that "[n]ot only does the Court have a duty to rehabilitate the minors who come before it, the Court also has a duty to protect the community." The court then went on to list and summarize the crimes and probation violations of Minor. The court then stated, "What is troubling, despite the Court finding . . . the uncle, to be a good person a decent person, I am alarmed by his testimony that he didn't know much about what is happening with [Minor]. He was not aware that this minor was not going to school until he got a call from school, the counselor's office. He was unaware that the minor was using marijuana, although he suspected he was. He claimed that [Minor] never used marijuana or used controlled substances in front of him. That may be the case. But the minor was placed in his custody, care, and control to supervise. [¶] Minor was not in school, he was not aware. He had violated curfew, according to his uncle. He has been under [the uncle's] care since 2016. He's unaware, [the uncle] that is, minor was associating with gangs. He even has a moniker, according to Officer Martinez. A 13-year-old getting involved with gangs is a recipe for disaster, and that's what we have."

The court went on to state, "Now, I have taken into consideration the fact that [Minor] was taken out of his own home and placed with [Guardians]. [Minor's counsel] argues that if we do—if the Court takes him away from his current home, he would be traumatized again. But the evidence in the case is that

14

what is happening at home since 2016 is not working. If I were to say otherwise, I am ignoring the facts of the case. It's not working. However, you want to twist it, however you want to spin it, it's not working. [¶] [¶] If I were to go with what probation is telling me to do, I would, in essence, be putting him back in a position where he came from. I would be putting him back in an environment that has not worked."

The court stated, "While it pains me to take [Minor] out of his home, I think placement is appropriate. Based on the record, inasmuch as, I don't want to take [Minor] out of his uncle's home, I have no choice. These are the facts that I am dealt with. This is the evidence before me. I just don't see any way around it. Yes, the Court is supposed to look for least restrictive means in terms of placing the minors. But this Court has always made it a point to rehabilitate the minor as soon as possible because if we don't we are preparing them for state prison. That's somehow lost. [¶] But this court, based on the evidence I have seen, he is ordered placed."

Accordingly, keeping the goals of juvenile court law in mind and its thoughtful explanation for its decision regarding minor's placement, we find no abuse of discretion in the juvenile court's decision to remove minor from the care and custody of Guardians and to place him in a suitable foster care facility. Minor needed placement before it was too late to redirect him from a life of criminal activity.

15

## DISPOSITION

The juvenile court's placement order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
                                                              J.

We concur:

RAMIREZ_____
                          P. J.

SLOUGH_____
                    J.