Filed 1/10/22  In re T.B. CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re T.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.B., <br><br> Defendant and Appellant. | A160837 <br><br> (Contra Costa County Super. Ct. No. J2000237) |

The juvenile court sustained allegations of a Welfare and Institutions Code section 602[1] petition alleging T.B. committed robbery (Pen. Code, § 211) and grand theft (*id.*, § 487, subd. (a)).  The court placed minor in the home of her mother under various terms and conditions, including an alcohol testing condition.  On appeal, T.B. (1) contends the finding on the grand theft count must be reversed as a lesser included offense of robbery; and (2) challenges the alcohol testing condition as unconstitutionally vague and otherwise unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).[2]

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  Superseded on another ground as stated in *People v. Moran* (2016) 1 Cal.5th 398, 403, footnote 6.

1

We reverse the finding on the grand theft count but otherwise affirm.

## BACKGROUND

In October 2019, a Victoria's Secret loss prevention officer saw then 16-year-old T.B., along with another minor, putting bottles of perfume into their bags and subsequently leaving the store. The officer identified himself and called out to the minors to stop. They did not do so and took off running through the mall. The officer was able to catch up to T.B. and once again ordered her to stop while displaying his badge. T.B. continued to flee and split up from her coparticipant. The officer called 911. While on the phone, T.B. reached into her bag and began throwing perfume boxes at the officer. He was able to grab the bag and told her to stop throwing the perfume boxes. T.B. then punched the officer in the face with a closed fist, knocking his glasses off. As he reached down to grab his glasses, T.B. bit him on his shoulder, puncturing his skin and causing him to bleed.

Roseville Police Officer Shannon Rauls received the call from dispatch. Officer Rauls was in the Victoria's Secret store at the time of the incident because he had been responding to an earlier theft incident. Officer Rauls proceeded to the parking lot to cut off the fleeing suspects. When he exited the mall, he saw "two females running through the parking lot" with the loss prevent officer "trailing at a distance." Officer Rauls subsequently detained both minors. A search of T.B. revealed the keys to her mother's car which was parked nearby. When Officer Rauls looked inside, he saw approximately 10 boxes of Victoria's Secret perfume in the empty car with the sensors still attached. All total, 37 boxes of perfume and merchandise were recovered valued at "approximately $2,600."

The Placer County District Attorney filed a section 602 petition alleging one count of felony second degree robbery (Pen. Code, § 211) and one

2

count of felony grand theft (*id.*, § 487, subd. (a)). The Placerville juvenile court sustained both allegations contained in the petition, and then transferred the case to Contra Costa County for disposition.

After the case was transferred, the Contra Costa juvenile court adjudged minor a ward of the court, the parties stipulated the "maximum custodial time will be 5 years," and the court placed T.B. at her mother's home subject to several conditions, including that T.B. "[s]ubmit to drug and alcohol testing as directed by the [Department Probation Officer]."

## DISCUSSION

### *Grand Theft*

Before sustaining the allegations, the Placer County juvenile court heard from counsel. The deputy district attorney stated the minor had a blue purse with her containing "approximately $377 worth of merchandise" and a Zara bag containing "$545 of merchandise." Additionally, there "was over $700 worth of merchandise" recovered from T.B.'s mother's car.[3] The prosecutor continued that T.B. "who was clearly stealing, used force in order to attempt to retain possession of that property, and that use of force elevates this from a theft to a robbery. The People would ask . . . the Court finds the allegation true of a violation of Penal Code Section 211, and also established is that she stole by herself and in conjunction with her co-participant over $950 worth of merchandise and the allegation of grand theft is also true."

The court, in turn, stated this was "the clearest case of robbery I have seen in 26 years on the bench," and further the "same is true as to the grand theft charge, again, without a doubt. The value of the perfume was well over the $950 limit." The court sustained the allegations in the petition.

---

[3] Minor's coparticipant had a bag containing "approximately $963 worth of merchandise."

3

Before the Placer County juvenile court transferred T.B.'s case to Contra County for disposition, it noted on the order sustaining the allegations that the maximum confinement was five years eight months (five years for the robbery plus eight months for the grand theft). The court also wrote on the order, "court finds this was a flagrant *Estes*[4] robbery, court encourages judge to review video." (Italics added.) The case was then transferred to Contra Costa for disposition.

Before the Contra Costa County juvenile court announced disposition, the court asked, "So I had a quick question related to the sustained offenses. Was it basically the same course of conduct; the robbery and the grand theft?" T.B.'s counsel replied, "It appears so, yes." Later on in the proceedings when determining restitution, the court once again asked, "I don't think it should be double this since this is the same course of conduct. I do understand that two separate offenses were sustained, but it seems as if this is only one course of conduct. Is that correct? [¶] I mean, I asked this earlier[,] but it sounds like there was no separate grand theft from another store; is that correct?" T.B.'s counsel replied, "That's my understanding from the limited information that I have. . . ."

The court went on to state, "Right. So I don't think it's fair to basically double the restitution fine when it's the same course of conduct. [¶] Similarly, I haven't gone back to look, I'm assuming it's a six-year max for the robbery, but they did not add extra time for the grand theft because it seems like it would be subject to [Penal Code section] 654." T.B.'s counsel responded, "I think a five-year max." The court continued, "Well, I'm just asking because I took the time to look at the maximum custodial time. It had five years and eight months, and that's why I am thinking there was a

_____

4 *People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*).

4

tacking on." The court went on, the Placer County "set the time, and so that's why I am kind of confused because it would seem as if . . . [¶] . . . [¶] a max of potentially five years because I think that's the max for the robbery, but then I thought I was wrong."

After an off-the-record discussion, the court stated, "It would appear that way, but I really don't know what was considered by the other judge. I'm just not entirely sure. [¶] . . . My thought would be if there is an agreement that this was a continuous course of conduct and that this really would be [Penal Code section] 654, that it really should be a max of five years, but I only have a dispo report and very limited documents from Placer County. But I just wanted to confirm that from my reading of the report it seemed like it's the incident from Victoria's Secret that the [Penal Code section] 487 was essentially—it was part of the continuous conduct of the robbery."

The prosecutor responded, "Judge, I'm fine with that. I mean, I don't know if maybe because they found the additional merchandise in the car they are counting that, I don't know. I am fine with stipulating to five years. That's fine. I have very limited information as well so I can see how it appears to be just the [Penal Code section] 211, and so I think five years is appropriate."

The court then stated, "Because it seemed to be a—if there is a stipulation to set it at five years I will do so. I just, I don't want to second guess what happened but I just want to clarify that from the report it seems to be the same related conduct and will potentially be subject to [Penal Code section] 654."

On appeal, T.B. contends the original juvenile court erred in sustaining both the robbery and grand theft allegations because multiple convictions are

5

prohibited where one offense is necessarily included in another.[5] (*People v. Ortega* (1998) 19 Cal.4th 686, 692 (*Ortega*), overruled on another point as stated in *People v. Reed* (2006) 28 Cal.4th 1224, 1230-1231.)

As T.B. points out, "theft, whether grand theft or petty theft, is a necessarily included offense of robbery." (*Ortega, supra,* 19 Cal.4th at p. 694; *Estes, supra,* 147 Cal.App.3d at p. 28.) Accordingly, T.B. is correct in asserting she could not be convicted of both robbery and grand theft based upon the same conduct. (*Ortega*, at p. 699.)

In *Estes, supra*, 147 Cal.App.3d 23, a security guard at a store saw the defendant remove clothing from a rack, put it on, and leave without paying. (*Estes, supra*, 147 Cal.App.3d at p. 26.) The guard followed the defendant outside to a parking lot, identified himself, and asked him to return to the store. (*Ibid.*) The defendant refused and began walking away. When the guard attempted to detain him, defendant pulled a knife, and swung it at the guard while threating to kill him. (*Ibid.*) A jury convicted the defendant of both robbery and petty theft. (*Ibid.*)

---

[5] It is clear from the record that the Contra Costa County court was concerned about the implication of Penal Code section 654. However, on appeal, T.B. raises a slightly different issue: that as theft is a lesser included offense of robbery, the finding on the grand theft allegation must be reversed. The Attorney General also categorizes this as a Penal Code section 654 issue. Since the analysis is the same, we address respondent's counter argument. Penal Code section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." "This provision 'protects against multiple punishment, not multiple conviction. [Citation.]' [Citation.] Although it 'literally applies only where such punishment arises out of multiple statutory violations produced by the "same act or omission," ' we have extended its protection 'to cases in which there are several offenses committed during "a course of conduct deemed to be indivisible in time." ' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1062.)

On appeal, defendant asserted, among other things, that he could not be convicted of robbery, as the property taken "was not taken from a person since the security guard did not have the authority or control over the property." (*Estes, supra*, 147 Cal.App.3d at p. 26.)  He also maintained that since "theft is a lesser included offense within robbery," he could not be convicted of both robbery and petty theft. (*Id.* at p. 28.)

The Court of Appeal disagreed with the first contention but agreed with the latter.  As to the latter, the court concluded "[w]here there is sufficient evidence to sustain the conviction of the greater offense, the conviction of the lesser offense must be reversed." (*Estes, supra*, 147 Cal.App.3d at p. 28.) And "[s]ince there is substantial evidence to support the conviction of robbery, we must reverse the conviction for petty theft." (*Id.* at p. 29.)

The Attorney General posits that because the Contra Costa County juvenile court did not stay the sentence on the grand theft finding under Penal Code section 654, it can be inferred the court determined the grand theft allegation was based on a "burglary" earlier in the day "that resulted in the 10 boxed perfumes with Victoria's Secret magnetic tags, located in appellant's mother's car."  The sustained grand theft allegation, in turn, necessarily involved T.B.'s return to the store and encounter with the security guard.

Respondent's argument fails for several reasons.  First, there was no burglary alleged in this case; rather, the two sustained allegations were second degree robbery and felony grand theft of property over $950.[6]  Second,

---

[6]  We note that when the case was tried, the prosecutor asserted the value of merchandise found in T.B.'s mother's car was approximately "$700"—not sufficient to support grand theft. (Pen. Code, § 487, subd. (a) [grand theft is theft committed when "the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950)"].)

the timeline of events suggested by the Attorney General is not apparent from the record; rather, the record suggests otherwise.  Although it is not clear from the limited record whether the Placer County juvenile court made an express finding that the alleged crimes resulted from a single sequence of events, it is clear that the court considered the robbery a "flagrant *Estes* robbery."  (Italics added.)  It is also readily apparent that the Contra Costa juvenile court, which did not try the case, did not have a clear understanding of the exact circumstances and therefore asked defense counsel, "Was it basically the same course of conduct; the robbery and the grand theft?"  T.B.'s counsel replied, "It appears so, yes," and the prosecutor did not disagree.

Accordingly, on this record, we conclude *Estes* applies, and the finding on the grand theft allegation must be reversed.[7]

### Alcohol Condition

The court imposed the following probation condition:  T.B. must "[s]ubmit to drug and alcohol testing as directed by [the department probation officer]."

#### Vagueness

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'  [Citation.]  The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions.  (U.S. Const., Amends V, XIV; Cal. Const., art. I, § 7.)' "  (*In re*

---

While an itemized receipt was admitted into evidence, that receipt is not in the record before us on appeal.

[7]  Although reversal of the grand theft finding is required, it does not affect T.B.'s sentence because the juvenile court did not include the grand theft count in determining the maximum term of confinement.

*Sheena K.* (2007) 40 Cal.4th 875, 890.) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) Probation conditions are given " ' "the meaning that would appear to a reasonable, objective reader." ' " (*In re I.V.* (2017) 11 Cal.App.5th 249, 261.)

For the first time on appeal, T.B. contends the probation condition is vague because she "can only guess at what might be required of her." Specifically, she does not know if she is "required to provide urine samples," or if she could be "required to submit to a blood draw at any time without notice."

When, as in this case, a minor is found to be a person described by section 602 and the court does not remove the minor from the physical custody of her parent, section 729.3 expressly permits the juvenile court to require the minor to submit to urine testing.[8]

In addition, when, as in this case, a minor is also adjudged a ward of the court, section 730 authorizes the court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) Section 730 has been held to authorize probation conditions requiring drug and alcohol testing by blood, breath, or urine. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33, 40 [upholding probation

---

[8] Section 729.3 provides, "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of his or her parent or guardian, the court, as a condition of probation, may require the minor to submit to urine testing upon the request of a peace officer or probation officer for the purpose of determining the presence of alcohol or drugs."

9

condition requiring ward to " '[s]ubmit to chemical test(s) of blood, breath, or urine for alcohol/controlled substances, as directed by the probation officer' "]; see *In re Jimi A.* (1989) 209 Cal.App.3d 482, 487–488 [upholding probation condition requiring ward to submit to "random drug testing"]; *In re Jose R.* (1982) 137 Cal.App.3d 269, 278–280 (*Jose R.*) [upholding probation condition requiring ward to submit to " 'any tests' " to determine alcohol and drug use].)

Accordingly, the condition is not unconstitutionally vague, and we turn to whether the alcohol testing condition via urinalysis is reasonable.[9]

### Lent *and Other Constitutional Challenges*

At a probation interview before disposition, T.B. admitted to regular marijuana use. She smoked marijuana with her coparticipant "every other week," and she had "smoked marijuana [on] the day" of the incident. She denied using "any other substances or alcohol." The probation department assessed T.B. as "moderate" risk in "Substance Abuse," and noted her assessment "suggest[ed] a need for monitoring and intervention."

At the dispositional hearing, minor's counsel objected to the alcohol testing condition, arguing "[i]t does not appear that that was a factor in this case. It's not something that [T.B.] has used in the past, not anyone in her family uses, under '*Ricardo*,' I don't think it's related to the incident or future criminality or past behavior by [T.B.]"

The juvenile court disagreed, stating, "I know that you've acknowledged using marijuana regularly, and while there has been no acknowledgement of using alcohol that I can recall, you are not to use or possess it. I think that is an appropriate term of probation, and I hope there will be no positive alcohol test or marijuana test."

---

[9] T.B. makes separate challenges to the testing condition "via blood draw," which we address *ante*.

" 'The purposes of juvenile wardship proceedings are twofold:  to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct.' "  (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)  When imposing probation conditions, the juvenile court considers the circumstances of the offense as well as the minor's entire social history.  (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on other grounds as stated in *In re Jaime P.* (2006) 40 Cal.4th 128, 130, 139.)  Moreover, " '[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' "  (*Ricardo P.*, at p. 1118.)

We review conditions of probation for abuse of discretion (*Ricardo P., supra*, 7 Cal.5th at p. 1118), upholding juvenile court orders unless " 'the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' "  (*Ibid.*)

Under *Lent, supra*, 15 Cal.3d 481, a condition "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' "  (*Id*, at p. 486.)  The *Lent* test is "conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term."  (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).)  Additionally, the *Lent* test "governs in juvenile and adult probation cases alike."  (*Ricardo P., supra*, 7 Cal.5th at p. 1119.)

As she did in the juvenile court, T.B. contends the alcohol testing condition is not reasonably related to future criminality in violation of *Ricardo P.*, and also violates her constitutional rights to privacy and her

11

Fourth Amendment rights against unreasonable seizures.  Her arguments have long since been rejected by the courts.

*In re Kacy S.* (1998) 68 Cal.App.4th 704 (*Kacy S.*) is directly on point. In that case, the minors admitted to being within the provisions of section 602, were not removed from the physical custody of their parents, and were placed on six months' probation subject to various conditions, including that they " 'submit to urine testing to determine the presence of alcohol and illegal drugs in [their] system[s] pursuant to section 729.3." (*Kacy S.*, at pp. 707–708.)  On appeal, the minors contended the court abused its discretion in imposing the urine testing condition because "neither [of] their offenses nor their social histories suggest substance abuse," "the condition violates their constitutional rights to privacy, protection from unreasonable searches and seizures, due process of law and equal protection." (*Id.* at p. 708.)

First, the court determined that the condition was reasonable under *Lent*.  The court noted, the "urine testing condition is designed to detect the presence of substances whose use by minors is *unlawful*.  (Cal. Const., art. XX, § 22 [alcohol]; Health & Saf. Code, § 11000 et seq. [drugs].)  Thus, the testing ' "relates to conduct which is . . . in itself criminal." ' ([*Lent, supra,*] 15 Cal.3d [at p.] 486. . . .)  Moreover, in enacting section 729.3, the Legislature has found that 'alcohol and drug abuse' are 'precursors of serious criminality. . . .' (Stats. 1989, ch. 1117, § 1, subd. (a)(2). . . .)  Thus, the testing is also ' "reasonably related to future criminality.'' (*Lent*, *supra*, 15 Cal.3d at p. 486.)  Because the testing condition relates to criminal conduct and is reasonably related to future criminality, its imposition is within the juvenile court's discretion even as measured by the *Lent* formulation." (*Kacy S., supra*, 68 Cal.App.4th at p. 710.)

Next, the *Kacy S.* court rejected the argument that the testing condition was an unreasonable invasion of privacy, subjecting the minors to unreasonable searches and seizures. (*Kacy S., supra*, 68 Cal.App.4th at pp. 710–711.) The court noted, "a probationer's expectations of privacy are diminished by his probation status and are subordinated to governmental activities which reasonably limit the right of privacy. [Citation.] [¶] The testing condition is a reasonable intrusion upon a probationer's expectation of privacy. [Citation.] The governmental interest in testing is strong. The juvenile court's goals are to protect the public and rehabilitate the minor." (*Id.*, at p. 711.) Sections 729.3 and 730 serve both goals. Section 729.3 "protects the public by establishing procedures to deter or prevent use of alcohol and unlawful drugs by minors. It advances the rehabilitation of young offenders by seeking to detect alcohol or drug use as a precursor of criminal activity in order to facilitate intervention at the earliest time." (*Kacy S.*, at p. 711; see § 730, subd. (b) ["The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the *reformation and rehabilitation of the ward enhanced.*" Italics added.].) Although testing "constitutes an intrusion on privacy, the effect of the intrusion is outweighed by the government's legitimate interest in closely monitoring the rehabilitation of minors who are granted probation and returned to the custody of their parents." (*Kacy S.*, at p. 711.)

T.B. acknowledges *Kacy S.* but asks to revisit that case in light of *Ricardo P.*, decided 20 years later.[10]

---

[10] T.B. also points to the dissent in *Kacy S.* as enunciating the reason why testing "should not be permitted as a juvenile probation condition in a case where alcohol was not related to the offense." The dissent stated there was no "demonstrable relationship" between the offense—using bad language

Nothing in *Ricardo P.*, *supra*, 7 Cal.5th 1113, alters the analysis or our conclusion. In that case, after placing the minor on probation, the juvenile court imposed a warrantless search condition "solely to enable probation officers to monitor whether Ricardo is communicating about drugs or with people associated with drugs." (*Id.,* at p. 1119.) The Supreme Court granted review on the issue of whether the electronic search condition was reasonably related to future criminality as is required under *Lent*. Thus, the high court assumed the condition was neither related to the underlying offense nor related to conduct which was itself criminal. (*Id.*, at pp. 1116, 1118–1119.)

In concluding the condition was not reasonably related to future criminality, the Supreme Court held the record before it, which contained "no indication that Ricardo had used or will use electronic devices in connection with drugs or any illegal activity," was "insufficient to justify the substantial burdens imposed" by the search condition. (*Ricardo P., supra*, 7 Cal.5th at p. 1116.) As the court explained, "*Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) Since the sweeping electronic search condition imposed "a very heavy burden on privacy with a very limited justification," it was not

---

on the school ground—and alcohol or drug use. In the case of section 729.3 which is permissive and subject to a test of abuse of discretion, if "there is no indication that substance abuse by the minor played a direct role in the offense or was a factor in bringing the offense about, the sentencing court abuses its discretion in imposing search or testing conditions pertaining to such substance abuse." (*Kacy S., supra*, 68 Cal.App.4th at pp. 713–715 [dis. opn. of Blease, Acting P.J.].) Here, however, T.B. did admit to regular substance use and admitted that she had used marijuana on the day of the incident.

" ' "reasonably related to future criminality" ' " and was therefore invalid under *Lent*. (*Id.* at p. 1124, italics omitted.)

T.B. compares her situation to that presented in *Ricardo P,* stating Ricardo, like herself, "stole property on a day when he used marijuana. Yet the California Supreme Court concluded that he had not wholly forfeited his right to privacy, and that a probation officer could not rummage at will through his electronics, searching for evidence of marijuana use."

T.B.'s comparison falls short for several reasons. First, unlike an electronics search condition that intrudes upon a wide range of otherwise lawful activity, the drug and alcohol testing condition relates solely to discovering evidence of minor's unlawful actions. The testing condition is valid under *Lent* for that reason alone. (See *Olguin, supra*, 45 Cal.4th 375, 379 [the three-part *Lent* test is conjunctive, and "all three prongs must be satisfied before a reviewing court will invalidate a probation condition"].) Further, the burdens imposed by the testing condition are proportional to achieving the legitimate goal of preventing future criminality by monitoring T.B.'s drug or alcohol use and establishing the means for early intervention to aid in her rehabilitation. (See *Ricardo P., supra*, 7 Cal.5th at p. 1122 [" 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality' "].) Finally, we note, T.B. does not challenge the drug testing condition, which could also involve blood and urine analysis. Given this, any burden placed on T.B. is significantly lessened.

Finally, T.B. makes separate challenges to the alcohol testing condition "via blood draw." For the reasons stated above, we also conclude chemical testing, including means other than urine testing, such as blood testing, is

15

also reasonable under *Lent*. Indeed, courts have upheld testing conditions by means of blood, breath, or urine, and we look to *P.A.*, *supra*, 211 Cal.App.4th 23, as illustrative.

In that case, the court rejected a minor's challenge to a condition that he " '[s]ubmit to chemical test(s) of blood, breath, or urine for alcohol/controlled substances, as directed by the probation officer or any law enforcement officer.' " (*P.A., supra*, 211 Cal.App.4th at p. 32.) The court held that "[b]ased on the plain language of sections 729.3 and 730 and the legislative history of section 729.3, we conclude that the enactment of section 729.3 was not intended to affect the court's discretion under section 730 to impose blood or breath testing as a condition of probation when it is permissible to do so under that statute." (*P.A.*, at p. 40.)

T.B. acknowledges *P.A.* held blood, alcohol or urine tests were allowed under section 730. However, she asserts the case was wrongly decided for two reasons. First, she contends "a specific statutory provision always controls over a general one," and here the section "specifically addressing testing of juvenile delinquents for drug and alcohol use is section 729.3, and it therefore controls over section 730." Second, she asserts that as section 729.3 was enacted after section 730, section 730 "was amended by implication" because it "conflicts" section 729.3.

*P.A.* addressed both of these contentions. The minor in that case also relied on the rule of statutory construction that specific statutory provisions control over general provisions. In response, the court stated, "If section 729.3 provided that the court shall not require minors to submit to blood testing, Minor's argument would be appropriate. The specific provision (no blood testing) would clearly control over the general provision (court may impose reasonable conditions). Section 729.3, however, does not prohibit

16

blood testing on minors; it merely authorizes urine testing. Moreover, this rule of construction 'is merely an aid in determining legislative intent. It will not be applied so as to defeat legislative intent otherwise determined.' [Citation.] . . . [I]n enaction section 729.3, the Legislature did not intend to preclude blood testing when it is otherwise permissible under section 730." (*P.A., supra*, 211 Cal.App.4th at p. 40, fn. 14.)

Next, the court stated "if the Legislature intended to abrogate the existing judicial authority to impose blood testing as a probation condition under section 730, it could have easily done so, but did not. Section 730 was enacted in 1961. (Stats. 1961, ch. 1616, § 2, pp. 3459, 3487.) At least one court relied on that statute to approve of a probation condition that required submission to 'any test' for drug or alcohol use prior to the enactment of section 729.3 in 1989. (. . . *Jose R., supra*, 137 Cal.App.3d at pp. 278–280.) If, at the time section 729.3 was enacted, the Legislature intended to abrogate *Jose R.* or limit the court's ability to impose such a condition, it could have done so by amending section 730 or otherwise making clear that blood testing was not permitted. Expressly authorizing urine testing in section 729.3 and saying nothing as to blood or breath testing does not indicate such intent." (*P.A., supra*, 211 Cal.App.4th at p. 39.)

Given T.B.'s regular use of marijuana, including on the day of the robbery and the probation report concluding T.B. was at "moderate" risk of substance abuse, the juvenile court acted well within its discretion to order T.B. to submit to both drug and alcohol testing.

## DISPOSITION

The juvenile court's true finding on the grand theft count is reversed. In all other respects, the judgment is affirmed.

17

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.

A160837, In re TB

18